**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
JENIFFER BEDA and NICOLE GARCIA,          **Case No. 7:22-cv-04827-NSR-VR**
individually and on behalf of all others similarly situated,

                                 Plaintiffs,

            -against-

THE NURTURY AT FLANDREAU, INC., THE
NURTURY OF LARCHMONT, INC., THE
NURTURY MONTESSORI AT NORTH
AVENUE, LLC, BRIANNA BANAHAN, and
CATHLEEN BILLONE a/k/a CATHY BILLONE,

                             Defendants.
-------------------------------------------------------------------X

## <u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND LEAVE TO DISTRIBUTE NOTICE PURSUANT TO 29 U.S.C. § 216(b)</u>

Justin Ames, Esq.
AKIN LAW GROUP PLLC
45 Broadway, Suite 1420
New York, NY 10006
Tel:  (212) 825-1400
*Attorneys for Plaintiffs and the FLSA Collective*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iv

PRELIMINARY STATEMENT ....................................................................................... 1

RELEVANT PROCEDURAL HISTORY AND FACTS .................................................. 2

    I.      RELEVANT PROCEDURAL HISTORY .............................................. 2

    II.     RELEVANT FACTS ............................................................................. 3

ARGUMENT ..................................................................................................................... 7

    I.      DEFENDANTS ARE A SINGLE INTEGRATED ENTERPRISE ......... 7

    II.     PROMPT NOTICE TO POTENTIAL COLLECTIVE ACTION MEMBERS SERVE THE BROAD REMEDIAL PURPOSES OF THE FLSA ........................ 11

    III.    PLAINTIFFS SATISFY THE MINIMAL BURDEN NECESSARY TO GRANT CONDITIONAL CERTIFICATION OF A COLLECTIVE ACTION AND THE SENDING OF NOTICE TO POTENTIAL COLLECTIVE ACTION MEMBERS ............................................................................ 13

    IV.    THE COURT SHOULD ORDER THAT NOTICE AND A REMINDER NOTICE BE SENT TO POTENTIAL COLLECTIVE ACTION MEMBERS AND ORDER DEFENDANTS TO PRODUCE COMPLETE CONTACT INFORMATION FOR ALL SIMILARLY SITUATED EMPLOYEES AT ALL LOCATIONS .............. 17

           A.  The Court should Order the Notice Period to Date Back Six Years and 228 Days Before the Filing of the Complaint ........................................ 18

           B.  The Court Should Order Defendants to Produce Potential Collective Action Members' Complete Contact Information ................................. 20

           C.  The Court Should Allow Plaintiffs to Send a Notice and a Reminder Notice to Potential Collective Action Members Via Mail and E-Mail ............................................................................................ 21

           D.  The Court Should Permit Plaintiffs to Distribute the Notices to Potential Collective Action Members in English, Portuguese, Spanish and Any Other Language Identified by Defendants ............................................. 22

    V.     THE COURT SHOULD ORDER DEFENDANTS TO POST NOTICES IN THE WORKPLACE ................................................................................. 23

VI.    THE COURT SHOULD ORDER EQUITABLE TOLLING OF THE STATUTE
       OF  LIMITATIONS UNDER THE FLSA ............................................................. 24

**CONCLUSION** ............................................................................................................. 25

# TABLE OF AUTHORITIES

## Cases

*Aguilar v. Trolio Landscaping, Inc.,*
7:16-cv-2230 (CS) (S.D.N.Y. June 27, 2016) .................................................................. 17

*Amador v. Cils, Ltd d/b/a Club Int'l Limousine,*
7:16-cv-1733 (VB) (S.D.N.Y. June 14, 2016) ................................................................ 17

*Arculeo v. On-Site Sales & Marketing, LLC,*
425 F.3d 193 (2d Cir. 2005) .......................................................................................... 7

*Avila v. Northport Car Wash, Inc.,*
774 F.Supp.2d 450 (E.D.N.Y. 2011) .............................................................................. 19

*Barfield v. N.Y. City Health and Hosps. Corp.,*
537 F.3d 132 (2d. Cir. 2008) ........................................................................................ 7

*Benavides v. Serenity Spa NYC Inc.,*
166 F.Supp.3d 474 (S.D.N.Y. 2016) .............................................................................. 24

*Bonilla v. City of N.Y.,*
No. 20-cv-1704 (RJD) (LB), 2020 U.S. Dist. LEXIS 211171 (E.D.N.Y. Nov. 10, 2020) ............. 18

*Braunstein v. E. Photographic Labs, Inc.,*
600 F.2d 335 (2d Cir. 1978) .......................................................................................... 12

*Bravo v. Established Burger One, LLC,*
2013 U.S. Dist. LEXIS 146237 (S.D.N.Y. Oct. 8, 2013) ........................................... 8, 10

*Cabrera v. 211 Garage Corp.,*
2008 U.S. Dist. LEXIS 67050 (S.D.N.Y. Aug. 22, 2008) ............................................. 14

*Campos v. Vineyard Food & Beverage, Inc.,*
2015 U.S. Dist. LEXIS 178118 (S.D.N.Y. Jan. 12, 2015) ............................................ 14

*Cheng Chung Liang v. J.C. Broadway Rest., Inc.,*
2013 U.S. Dist. LEXIS 73976 (S.D.N.Y. May 23, 2013) ......................................... 11, 16

*Cherif v. Samday Delivery Corp.,*
2015 U.S. Dist. LEXIS 133807 (E.D.N.Y. Sept. 30, 2015) ........................................... 21

*Citi Connect, LLC v. Local Union No. 3, IBEW*,
2020 U.S. Dist. LEXIS 185796 (S.D.N.Y. Oct. 7, 2020) ............................................... 18

*Colon v. Major Perry Street Corp.*,
2013 U.S. Dist. LEXIS 93021 (S.D.N.Y. July 2, 2013) ................................................. 23

*Cunningham v. Elec. Data Sys. Corp.*,
754 F. Supp.2d 638 (S.D.N.Y. 2010) .......................................................................... 14

*Cuzco v. Orion Builders, Inc.*,
477 F.Supp.2d 628 (S.D.N.Y. 2007) ........................................................................... 23

*David v. LIH Property Mgmt. Srvcs. LLC*,
1:15-cv-1522 (JMF), Dkt. No. 28 (S.D.N.Y. June 15, 2015) ...................................... 17

*Fa Ting Wang v. Empire State Auto Corp.*,
 2015 U.S Dist. LEXIS 99417 (E.D.N.Y. July 29, 2015) ............................................ 21

*Fasanelli v. Heartland Brewery, Inc.*,
516 F.Supp.2d 317 (S.D.N.Y. 2007) ....................................................... 12, 15, 19, 21

*Fernandez v. Sharp Mgmt.*,
2016 U.S Dist. LEXIS 14196 (S.D.N.Y. Oct. 13, 2016) ............................................ 16

*Fonseca v. Dircksen & Talleyrand, Inc.*,
2014 U.S. Dist. LEXIS 52744 (S.D.N.Y. Apr. 11, 2014) ........................................... 18

*Gani v. Guardian Serv. Indus. Inc.*,
2011 U.S. Dist. LEXIS 4353 (S.D.N.Y. Jan. 13, 2011) .............................................. 19

*Garcia v. Spectrum of Creations, Inc.*,
102 F.Supp.3d 541 (S.D.N.Y. 2015) .......................................................................... 16

*Glatt v. Fox Searchlight Pictures Inc.*,
2012 U.S. Dist. LEXIS 121964 (S.D.N.Y. Aug. 26, 2013) ........................................ 24

*Goldberg v. Whitaker House Coop., Inc.*,
366 U.S. 28 (1961) ......................................................................................................... 7

*Gonzalez v. Scalinatella, Inc.*,
2013 U.S. Dist. LEXIS 168540 (S.D.N.Y. Nov. 25, 2013) ........................................ 18

*Guaman v. 5 "M" Corp.,*
2013 U.S. Dist. LEXIS 152379 (S.D.N.Y. Oct. 23, 2013 ) ........................................ 18

*Hamadou v. Hess Corp.*,
915 F.Supp.2d 651 (S.D.N.Y. 2013) ................................................................ 12

*Harhash v. Infinity West Shoes, Inc.,*
2011 U.S. Dist. LEXIS 96880 (S.D.N.Y. Aug. 24, 2011) ................................... 24

*Hart v. Crab Addison,*
2015 U.S. Dist. LEXIS 9197 (W.D.N.Y. Jan. 27, 2015) ..................................... 25

*Hernandez v. Bare Burger Dio, Inc.,*
2013 U.S. Dist. LEXIS 89254 (S.D.N.Y. June 25, 2013) .................................... 20

*Hernandez v. City of New York,*
2017 U.S. Dist. LEXIS 102285 (S.D.N.Y. Jun. 29, 2017 .............................2, 12, 14, 15, 20, 22

*Hernandez v. Highgate Hotels, L.P., et al,*
1:15-cv-8144 (JGK) (S.D.N.Y. Feb. 4, 2016) ................................................... 17

*Hernandez v. Merrill Lynch & Co., Inc.,*
2012 U.S. Dist. LEXIS 19822 (S.D.N.Y. Apr. 6, 2012)..................................... 20

*Hoffman v. Sbarro, Inc.,*
982 F.Supp.249 (S.D.N.Y. 1997) ......................................................... 12, 13, 14

*Hoffman-La Roche, Inc. v. Sperling,*
493 U.S. 165 (1989).......................................................................... 11, 12, 17

*In re Penthouse Exec. Club Comp. Litig.,*
2010 U.S. Dist. LEXIS 114743 (S.D.N.Y Oct. 26, 2010) ................................. 14, 15

*Iriarte v. Café 71, Inc.,*
2015 U.S. Dist. LEXIS 166945 (S.D.N.Y. Dec. 11, 2015) ................................. 23

*Jackson v. Bloomberg L.P.,*
298 F.R.D. 152 (S.D.N.Y. 2014) ......................................................... 12, 22, 25

*Juarez v. 449 Rest., Inc.,*
29 F.Supp.3d 363 (S.D.N.Y. July 2, 2014) ........................................ 7, 10, 12, 13

*Kew Sing Yap v. Mooncake Foods, Inc.*,
146 F.Supp.3d 552 (S.D.N.Y. 2015) ............................................................. 7

*Khalil v. Original Homestead Rest., Inc.*,
2007 U.S. Dist. LEXIS 70372 (S.D.N.Y. Aug. 9, 2007) .............................. 16

*Kim Man Fan v. Ping's on Mott, Inc.*,
2014 U.S. Dist. LEXIS 54170 (S.D.N.Y. Apr. 14, 2014).............................. 24

*Laroque v. Domino's Pizza, LLC*,
557 F.Supp.2d 346 (E.D.N.Y. 2008) ........................................................... 15

*Lee v. ABC Carpet & Home*,
236 F.R.D. 193 (S.D.N.Y. 2006) ................................................................. 25

*Lynch v. United Serv. Auto. Ass'n*, 4
91 F.Supp.2d 357 (S.D.N.Y. 2007) ......................................................... 12, 15

*Maldonado v. Arcadia Bus. Corp.*,
2015 U.S Dist. LEXIS 54523 (E.D.N.Y. Apr. 27, 2015) ............................. 22

*McGlone v. Contract Callers*,
867 F.Supp.2d 438 (S.D.N.Y. 2012) ........................................................... 25

*Mentor v. Imperial Parking Sys.*,
 246 F.R.D. 178 (S.D.N.Y. Sept. 27, 2007) ................................................. 15

*Mongiove v. Nate's Corp.*,
2016 U.S. Dist. LEXIS 16878 (E.D.N.Y. Feb. 11, 2016)............................. 21

*Morris v. Lettire Const., Corp.*,
896 F.Supp.2d 265 (S.D.N.Y. 2012) ........................................................... 22

*Nahar v. Dozen Bagels Co.*, Inc.,
2015 U.S. Dist. LEXIS 143839 (S.D.N.Y. Oct. 20, 2015) ........................... 16

*Perez v. Westchester Foreign Autos, Inc.*,
2013 U.S. Dist. LEXIS 35808 (S.D.N.Y. Feb. 28, 2013)............................... 8

*Pippins v. KPMG LLP*,
2012 U.S Dist. LEXIS 949 (S.D.N.Y. Jan. 2, 2012)..................................... 22

*Ramirez v. M L Rest., Corp.*,
2015 U.S. Dist. LEXIS 181605 (S.D.N.Y. March 13, 2015) .................................................. 12, 17

*Rojas v. Kalesmeno Corp.*,
2017 U.S. Dist. LEXIS 112491 (S.D.N.Y. July 19, 2017) ........................................................ 23

*Romero v. ABCZ Corp.*,
2015 U.S. Dist. LEXIS 58765 (S.D.N.Y. Apr. 28, 2015) ........................................................... 22

*Romero v. La Revise Assoc.*, LLC,
968 F.Supp.2d 639 (S.D.N.Y. 2013) ....................................................................................... 16

*Rosario v. Valentine Ave. Discount Store, Co., Inc.*,
828 F.Supp.2d 508 (E.D.N.Y. 2011) ................................................................................... 10, 24

*Sexton v. Franklin First Fin., Ltd.*,
2009 U.S. Dist. LEXIS 50526 (E.D.N.Y. June 16, 2009) ......................................................... 20

*Sultonmurodov v. Mesivta of Long Beach*,
2015 U.S Dist. LEXIS 138324 (E.D.N.Y. Oct. 9, 2015) ...................................................... 19, 22

*Torres v. Gristede's Operating Corp.*,
2006 U.S Dist. LEXIS 74039 (S.D.N.Y. Sept. 29, 2006) .......................................................... 14

*Toure v. Cent. Parking Sys. of N.Y.*,
2007 U.S. Dist. LEXIS 74056 ................................................................................................. 15

*Valerio v. RNC Indus., LLC*,
314 F.R.D. 61 (E.D.N.Y. 2016) ............................................................................................... 23

*Valerio v. RNC Industries*, LLC,
2:14-cv-03761 (LDW)(AKT) (E.D.N.Y. Jun. 24, 2016) ........................................................... 21

*Vargas v. Black forest Bew Haus, LLC*,
2016 U.S. Dist. LEXIS 64901 (E.D.N.Y. May 17, 2016) .......................................................... 18

*Whitehorn v. Wolfgang's Steakhouse, Inc.*,
767 F.Supp.2d 445 (S.D.N.Y. 2011) ................................................................................... 19, 24

*Winfield v. Citibank, N.A.*,
843 F.Supp.2d 397 (S.D.N.Y. 2012) ................................................... 12, 13, 14, 15, 17, 18

*Yahraes v. Rest. Assoc Events Corp.*,
2011 U.S. Dist. LEXIS 23115 (E.D.N.Y. Mar. 8, 2011) .................................................. 25

*Zhao v. Benihana, Inc.,*
2001 U.S. Dist. LEXIS 10678 (S.D.N.Y. May 7, 2001) .................................................. 16

*Zheng v. Liberty Apparel Co.,* Inc.,
355 F.3d 61 (2d Cir. 2003) ............................................................................................. 7

**Statutes**

29 U.S.C. § 216(b) ............................................................................... 1, 7, 11, 12, 15

29 U.S.C. § 255(a) ........................................................................................... 12, 19

29 U.S.C. § 203(d), (g) ............................................................................................ 7

**Executive Orders**

N.Y. Exec. Order Nos. 202.14 (April 7, 2020); 202.28 (May 7, 2020); 202.38 (June 6, 2020); 202.48 (July 6, 2020); 202.55 (August 5, 2020); 202.55.1 (August 6, 2020); 202.60 (September 4, 2020); 202.67 (October 4, 2020); 202.72 (November 3, 2020) ..................................................... 18

## PRELIMINARY STATEMENT

Plaintiffs Jeniffer Beda ("Beda") and Nicole Garcia ("Garcia") (collectively, "Plaintiffs"), move this Court pursuant to 29 U.S.C. § 216(b) for an Order conditionally certifying this case as a collective action under the Fair Labor Standards Act ("FLSA") and authorizing the distribution of notice to Assistant Teachers and Head Teachers of The Nurtury at Flandreau, Inc. ("Flandreau"), The Nurtury of Larchmont, Inc. ("Larchmont"), The Nurtury Montessori at North Avenue, LLC ("North Avenue") (Flandreau, Larchmont, and North Avenue, collectively, "Nurtury"), Brianna Banahan ("Banahan"), and Cathleen Billone a/k/a Cathy Billone ("Billone") (Banahan and Billone, collectively, "Individual Defendants"), (Nurtury and Individual Defendants, collectively, "Defendants").

During their employment with Defendants, Plaintiffs were unlawfully denied minimum wage and overtime pay under the FLSA (as well as the New York Labor Law and supporting regulations). Defendants paid Plaintiffs a flat hourly rate for the in-classroom work they performed (including all hours over 40 hours per week) and did not pay them at all for the out-of-classroom work they performed, in an obvious and willful attempt to avoid paying proper wages pursuant to state and federal law. Additionally, Defendants required Plaintiffs and similarly situated employees to work for Defendants for at least three years or be forced to pay Defendants thousands of dollars—up to $10,000—if their employment with Defendants ended prematurely. The onerous economic penalty Defendants imposed on Plaintiffs and similarly situated employees was particularly egregious, in light of Defendants' underpayment of their employees' wages, as the immigration status of many employees of Defendants was dependent upon remaining employed with Defendants, and because Defendants applied the mandatory repayment scheme to employees regardless as to whether they left Defendants' employ **voluntarily or involuntarily**. Given the

coercive economic conditions to which Defendants subjected Plaintiffs and similarly situated employees, Defendants' employment practices were tantamount to indentured servitude. It is clear by both Defendants' words and actions that they purposefully exploited (and continue to exploit) vulnerable, primarily immigrant workers—such as Plaintiffs—to profit from their illegal labor practices.

The Court should grant Plaintiffs' instant motion so that current and former non-exempt employees of Defendants can be notified of their right to participate in this lawsuit to recover unpaid wages. Many courts in this circuit have granted conditional certification of FLSA collective actions after plaintiffs have made a "modest factual showing" to meet their very "low" burden. See e.g., *Hernandez v. City of New York*, 2017 U.S. Dist. LEXIS 102285 (S.D.N.Y. June 29, 2017), citing *Myers v. Hertz Corp.,* 624 F.3d 537, 555 (2d Cir. 2010); *Rashid v. Majmundar*, No. 1:12-cv-06578 (RA)*, 2013 WL 11319388, *1, (S.D.N.Y. April 4, 2013); *Sanchez v. El Rancho Sports Bar Corp.,* 2014 U.S. Dist. LEXIS 66234 (S.D.N.Y. May 13, 2014)*.

## <u>RELEVANT PROCEDURAL HISTORY AND FACTS</u>

### I.    RELEVANT PROCEDURAL HISTORY

On June 9, 2022, Beda filed this action alleging, *inter alia*, violations of the FLSA and New York Labor Law ("NYLL"), on behalf of herself and all others similarly situated.[1] Ames Declaration ("Ames Decl.") ¶ 2, Ex. 1. Beda filed an FLSA Consent Form contemporaneously with the filing of the Complaint. Ames Decl. ¶ 3, Ex. 2. On January 8, 2023, the parties participated in mediation in accordance with the Court's mediation program; however, the parties were unable to resolve any of the claims. Ames Decl. ¶ 4. On April 24, 2023, Garcia opted into this Collective

---

[1] Beda also alleges violations of Title VII, the NYSHRL, NYCHRL, FFCRA, and EPSLA; however, in this application, Plaintiffs move for conditional certification of an FLSA Collective only.

action by filing an FLSA Consent Form to become a party. Ames Decl. ¶ 5, Ex. 3. Contemporaneously with the filing of Garcia's FLSA Consent Form, Plaintiffs timely filed the First Amended Complaint ("FAC") to include Garcia's claims. Ames Decl. ¶ 6, Ex. 4. Defendants filed their Answer to the FAC on May 10, 2023. Ames Decl. ¶ 7. Subsequently, the parties engaged in discovery, which continues. Ames Decl. ¶ 8. Plaintiffs have identified significant deficiencies with Defendants' document production, including spoliation of crucial evidence discovered during the deposition of Banahan. Ames Decl. ¶ 9. Defendants' discovery deficiencies—including their acknowledged spoliation of evidence—will be addressed in a separate application to the Court.

## II.    RELEVANT FACTS

Defendants Flandreau, Larchmont, and North Avenue—the Nurtury Defendants—operate as part of a network of Montessori schools which are owned and operated by Banahan and Billone—the Individual Defendants. Ames Decl., Ex. 5 (Beda Declaration)[2] ¶ 2; Ames. Decl., Ex. 6 (Garcia Declaration)[3] ¶ 2; FAC ¶¶ 39, 50, 62. The Nurtury Defendants provide daycare services and Montessori educational instruction to children, including those between the ages of 12 weeks and 6 years old. Beda Decl. ¶ 2; Garcia Decl. ¶ 2; FAC ¶¶ 38, 49, 61. Defendants operate their Montessori schools out of several residential houses in Westchester. Beda Decl. ¶ 3, Garcia Decl. ¶ 3; FAC ¶¶ 43-44, 54-55, 66, 186. Among other locations, the Nurtury Defendants operate schools at the following addresses: (a) 130 Flandreau Avenue, New Rochelle, New York 10804, which is the address of Flandreau (the "Flandreau School"); (b) 11 North Brook Road, Larchmont, New York 10538, which is an address of Larchmont (the "North Brook Road School"); (c) 2097

---

[2] Exhibit 5 of the Ames Declaration shall be referred to as "Beda Declaration" (Beda Decl.).
[3] Exhibit 6 of the Ames Declaration shall be referred to as "Garcia Declaration" (Garcia Decl.).

Palmer Avenue, Larchmont, New York 10538 (the "Palmer Avenue School"), which is an address of Larchmont; (d) 1146 North Avenue, New Rochelle, New York 10804 (the "North Avenue School"), which is the address of North Avenue. Beda Decl. ¶ 4, Garcia Decl. ¶ 4; FAC ¶ 43, 54, 55, 66. Defendants additionally offer housing to the Assistant Teachers and Head Teachers they employ at the same residential houses from which they operate their Montessori schools.[4] Beda Decl. ¶ 5, Garcia Decl. ¶ 5; FAC ¶¶ 383, 405. The Individual Defendants are the owners and operators of the Nurtury Defendants and are responsible for the managerial and personnel decisions at all locations. Beda Decl. ¶ 6, Garcia Decl. ¶ 6; FAC ¶¶ 72-77, 82-87, 95-99, 104.

Beda worked at Defendants from approximately September 4, 2019, to November 29, 2020, at the North Avenue School, the Flandreau School, and the North Brook Road School and during her employment, she lived at the North Brook Road School. Beda Decl. ¶ 7; FAC ¶¶ 29, 148, 154, 175-178, 188. Throughout her employment with Defendants, Beda was a non-exempt employee. Beda Decl. ¶ 8; FAC ¶ 149. Beda held two titles during her employment—Assistant Teacher, from the commencement of her employment until the end of June 2020, and Head Teacher from the beginning of July 2020 until the end of her employment on or around November 29, 2020. Beda Decl. ¶ 8; FAC ¶¶ 29, 148, 268, 271, 273. Beda was primarily responsible for the care and, later, the instruction, of the children in the classrooms to which she was assigned, along with the cleaning and maintenance of the classrooms. Beda Decl. ¶ 9; FAC ¶¶ 29, 150-153, 273-275, 373. During her employment as both an Assistant Teacher and Head Teacher, Defendants required Beda to work varying hours, regularly over 40 hours per week, in-classroom. Beda Decl. ¶ 10; FAC ¶¶ 217, 270, 278, 351. Additionally, Beda was required to perform work for Defendants

---

[4] Defendants refer to the position of 'Head Teacher' interchangeably as "Head Teacher", "Lead Teacher", or "Teacher". For ease of reference, Plaintiffs herein refer to the position as "Head Teacher".

out of the classroom. Beda Decl. ¶ 11; FAC ¶¶ 272, 281-282. After Beda's constructive termination, Defendants required Beda to pay Defendants the amount of unused Montessori training tuition—totaling thousands of dollars. Beda Decl. ¶¶ 17-18; FAC ¶¶ 205, 209-210, 288-290, 293, 359-362, 369.

Garcia worked at Defendants full-time from approximately March 23, 2020, to May 31, 2020, and again from approximately November 10, 2021, to January 20, 2022, at the North Brook Road School and the Palmer Avenue School and during her employment, she lived at the North Avenue School. Garcia Decl. ¶ 7; FAC ¶¶ 34, 406, 416, 463, 496. Like Beda, she was a non-exempt employee. Garcia Decl. ¶ 8; FAC ¶ 129. For the duration of both periods of her employment with Defendants, Garcia held the title of Assistant Teacher. Garcia Decl. ¶ 8; FAC ¶ 34. Garcia's duties and responsibilities included but were not limited to cleaning the entire North Brook Road building, preparing the classroom for students, monitoring the students during the school day, and assisting the Head Teacher with providing care for and/or instruction of the students. Garcia Decl. ¶ 9; FAC ¶ 407. During both periods of her employment with Defendants, Defendants required Garcia to work varying hours, regularly over 40 hours per week, in-classroom. Garcia Decl. ¶ 10; FAC ¶¶ 412-413, 417-418, 471-473, 475. Like Beda, Garcia was required to perform work for Defendants outside of the classroom. Garcia Decl. ¶ 11; FAC ¶¶ 414, 472-473. After Garcia's termination, Defendants required Garcia to pay Defendants the amount of unused Montessori training tuition—totaling thousands of dollars. Garcia Decl. ¶¶ 17-18; FAC ¶¶ 459-461, 522-525.

As full-time employees, Plaintiffs were paid a flat hourly wage per hour of in-classroom work they performed, which fluctuated each week based upon the number of in-classroom hours worked by Plaintiffs. Beda Decl. ¶¶ 12-13; Garcia Decl. ¶¶ 12-13; FAC ¶¶ 6, 172-174, 197, 199,

267, 270-271, 276, 283, 297, 414, 419, 474. Defendants did not pay Plaintiffs at all for the work they performed outside of the classroom. Beda Decl. ¶ 14; Garcia Decl. ¶ 14; FAC ¶¶ 6, 174, 272, 280-283, 297, 413-414, 473-475. Defendants willfully failed to pay Plaintiffs the minimum wage for all hours worked and also failed to pay them overtime pay for hours worked in excess of 40 per workweek, in violation of the FLSA. Beda Decl. ¶¶ 15-16; Garcia Decl. ¶¶ 15-16; FAC ¶¶ Id.

In addition to Plaintiffs, Defendants employed numerous other Assistant Teachers and Head Teachers whom Defendants subjected to the same unlawful pay practices. Beda Decl. ¶¶ 20, 33-37; Garcia Decl. ¶¶ 19-20, 33-36. Specifically, Plaintiffs recall, based on their observations and conversations, that in addition to themselves, other Assistant Teachers and Head Teachers who have not yet opted-into this action were also subjected to the same unlawful compensation practices by Defendants, such as: Mercedes Teixeira, Bruna Caetano, Beatriz Carubi, Leah (last name unknown), Alejandra (last name unknown), Shamira (last name unknown), Andrea (last name unknown), Denise (last name unknown), and Sylvana (last name unknown). Beda Decl. ¶¶ 20, 33-37 Garcia Decl. ¶¶ 20, 33-36. Defendants additionally maintained policies that applied to Defendants' Assistant Teachers and Head Teachers, including the mandatory recording of Assistant Teachers and Teachers' in-classroom hours by three methods (logbook, Brightwheel application, and ADP application) and the provision and execution of a form employment contract which included, among other terms, the employee's flat, hourly rate of pay. Beda Decl. ¶¶ 25, 28-37; Garcia Decl. ¶¶ 23, 25, 28-36.

As discussed *infra*, Plaintiffs have met their minimal burden for the Court to grant their instant motion to conditionally certify this case as a collective action and authorize Plaintiffs to distribute Court Authorized Notice of Lawsuit ("Notice") to all similarly situated employees at all three of Defendants' locations.

<u>**ARGUMENT**</u>

**I.    DEFENDANTS ARE A SINGLE INTEGRATED ENTERPRISE**

The FLSA imposes liability on "employer[s] for unpaid minimum wages and overtime compensation." 29 U.S.C. § 216(b). As defined in the FLSA, an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee," and to "employ" means "to suffer or permit to work." 29 U.S.C. § 203(d), (g). "This definition is necessarily a broad one, in accordance with the remedial purpose of the FLSA." *Zheng v. Liberty Apparel Co., Inc.*, 355 F.3d 61, 66 (2d Cir. 2003). Whether an employment relationship exists for the purposes of the FLSA is determined on a "case-by-case basis by review of the totality of circumstances" and "should be grounded in 'economic reality rather than technical concepts.'" *Barfield v. N.Y. City Health and Hosps. Corp.*, 537 F.3d 132, 141-42 (2d. Cir. 2008) quoting *Goldberg v. Whitaker House Coop., Inc.,* 366 U.S. 28, 33 (1961). Under this test, courts consider whether a defendant had the power to hire and fire employees, supervise and control employee work schedules or conditions of employment, determine the rate and method of payments, and maintain employment records. *Zheng*, 355 F.3d at 66-68.

A "single integrated enterprise" is a theory of employer liability which holds that two nominally separate entities are part of a single integrated enterprise. *Arculeo v. On-Site Sales & Marketing, LLC*, 425 F.3d 193, 198 (2d Cir. 2005). In such circumstances, liability will not only be imposed on the nominal employer but also on another entity comprising part of the single integrated employer. *Id.*; See also, *Kew Sing Yap v. Mooncake Foods, Inc.*, 146 F.Supp.3d 552, 557 (S.D.N.Y. 2015). The factors considered under this theory are (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control. *Juarez v. 449 Rest., Inc.,* 29 F.Supp.3d 363, *367 (S.D.N.Y. July 2, 2014).

Numerous district courts in this district have used to this theory to assess whether a group of distinct but closely related entities should be treated as a single employer. See e.g., *Bravo v. Established Burger One, LLC,* 2013 U.S. Dist. LEXIS 146237 (S.D.N.Y. Oct. 8, 2013); *Perez v. Westchester Foreign Autos, Inc*., 2013 U.S. Dist. LEXIS 35808 (S.D.N.Y. Feb. 28, 2013).

In the instant case, Plaintiffs can satisfy the four elements necessary to establish that Defendants are a single enterprise with a high degree of interrelated operations, despite their distinct corporate names. Defendants own and operate a network of Montessori schools at multiple locations throughout Westchester County, New York, under the "Nurtury" trade name. Beda Decl. ¶¶ 1-4; Garcia Decl. ¶¶ 1-4; FAC ¶¶ 39, 43-44, 50, 54-55, 62, 66, 186. The Individual Defendants own, manage and oversee operations at all locations. Beda Decl. ¶¶ 6, 21-25; Garcia Decl. ¶¶ 6, 21-25; FAC ¶¶ 72-77, 82-87, 95-99, 104. Specifically, the Individual Defendants exercised the power and authority to hire and fire employees, establish the rate and method of pay, determine work schedules, control labor relations and personnel policies, maintain employment records, and determine the terms and conditions of Plaintiffs and other employees' employment, at all of their locations. Beda Decl. ¶¶ 6, 21; Garcia Decl. ¶¶ 6, 21; FAC ¶¶ 73-76, 83-86. Defendants Banahan and Billone hired Beda and Billone hired Garcia. Beda Decl. ¶ 22; Garcia Decl. ¶ 22. Both Individual Defendants assigned Beda, Garcia, and other Assistant Teachers and Head Teachers their school locations, monitored and evaluated the performance of Beda, Garcia, and other Assistant Teachers and Head Teachers at each location, responded to complaints by Beda, Garcia, and other Assistant Teachers about their rates of pay and working conditions at all locations, and set and modified Coronavirus, pay, and other policies governing the terms and conditions of employment of Beda, Garcia, and other Assistant Teachers and Head Teachers at all locations. Beda Decl. ¶ 24; Garcia Decl. ¶¶ 24, 29.

To further illustrate the unified operations of Defendants, Defendants jointly advertised their business on the same website (https://thenurtury-montessori.com), under the same logo and trade name.[5]  See Ames Decl. ¶ 13, Ex. 7.  Defendants' website embeds several YouTube videos, including a video marketing the Defendant entities collectively as "The Nurtury Montessori School", referring to the Individual Defendants as the owners, offering services to children ages 6 weeks to six years old (rather than any one entity by age group), and referring to a "new Rye Brook location" on North Ridge Street.[6]  See Ames Decl. ¶ 14.  Additionally, employees were often transferred and shared between locations.  Beda Decl. ¶¶ 7, 19, 27-28, 34; Garcia Decl. ¶¶ 7, 19, 24-25, 27-28, 34.  Throughout her employment, Beda herself worked at three locations, and Garcia worked at two locations, living at a third.  Beda Decl. ¶¶ 7, 19; Garcia Decl. ¶¶ 7, 19.  Neither Beda nor Garcia were required to reapply when they worked at different locations or required additional training to work at each location.  Beda Decl. ¶ 31; Garcia Decl. ¶ 31.  Defendants employed the same timekeeping policies and practices for Beda, Garcia, and the Assistant Teachers and Head Teachers at all locations, which served as the basis of their pay.  Beda Decl. ¶¶ 24-25, 32-34; Garcia Decl. ¶¶ 24-25, 32-34.  Books, art supplies, furniture, and other items were also regularly transferred between the locations as needed.  Beda Decl. ¶ 28; Garcia Decl. ¶ 28.

Notably, Beda's, Garcia's (and other employees') pay and the unlawful policies they were subjected to at each school location remained the same.  Beda Decl. ¶¶ 24-25, 32-33; Garcia Decl. ¶¶ 24-25, 32-33.  In this regard, Defendants enforced a common policy, applicable to all Assistant Teachers and Head Teachers, of failing to pay minimum wage for all hours worked and overtime pay for hours worked in excess of 40 per week.  Beda Decl. ¶¶ 33, 36; Garcia Decl. ¶¶ 33-36.  See

---

[5] https://thenurtury-montessori.com, retrieved November 26, 2023
[6] https://thenurtury-montessori.com, retrieved November 26, 2023.

*Juarez,* 29 F.Supp.3d at \*372 ("[A]lthough [plaintiff] worked at all three locations, he does not differentiate among them with respect to the pay policies he was subject to. This is enough, at this stage, to suggest that workers at all three [entities] were subject to the same pay practices."); *Marin v. Apple-Metro*, 2014 U.S. Dist. LEXIS 185238, \*26 (E.D.N.Y. July 29, 2014) (finding that plaintiffs met their minimal burden of showing that non-exempt employees at all 36 of defendants' locations were similarly situated because they were under common management, common ownership, and had interrelated labor practices); *Rosario v. Valentine Avenue Discount Stores Co. Inc.*, 828 F. Supp. 2d 508, 516-17 (E.D.N.Y. 2011) (finding that employees of 27 stores were subject to a "common unlawful policy" where defendant owner had ability to hire and fire, approve pay checks, and employees were commonly transferred between locations). Plaintiffs are aware of such policy because they personally observed other Assistant Teachers and Head Teachers perform the same and/or similar tasks as they did and work approximately the same hours per week because Defendants assigned multiple employees to work together at each school location and employees—including Beda and Garcia—were frequently exchanged between the locations. Beda Decl. ¶¶ 27, 34; Garcia Decl. ¶¶ 27, 34. Plaintiffs also had open discussion with the individuals named above about Defendants' unlawful pay policies. Beda Decl. ¶ 35; Garcia Decl. ¶ 35.

Nominally distinct entities have frequently been found to constitute a "single related enterprise" in this district. For example, in *Bravo*, multiple corporate defendants were found to be a "single integrated enterprise" because they shared a website, were marketed as one entity, used a single payroll method out of a centralized office, moved employees and food between restaurants, and used a common supervisor. *Bravo,* 2013 U.S. Dist. LEXIS 146237 at \*6.

The evidence undeniably demonstrates that the Nurtury was and is operated by Defendants as a single integrated enterprise. This, coupled with Plaintiffs' testimony, shows that the unlawful pay policies were implemented by Defendants across Defendants' locations and thus, were part of a common policy or plan. See *Cheng Chung Liang v. J.C. Broadway Rest., Inc.,* 2013 U.S. Dist. LEXIS 73976, *4 (S.D.N.Y. 2013) (holding that plaintiff's testimony about pay practices at one location "provides adequate evidence to indicate that employees at other [locations] controlled by defendants may be similarly situated.").

In light of the foregoing, conditional certification is appropriate for all three locations of Defendants.

## II.    PROMPT NOTICE TO POTENTIAL COLLECTIVE ACTION MEMBERS SERVE THE BROAD REMEDIAL PURPOSES OF THE FLSA

The FLSA provides that an employer who fails to pay its employees minimum wage or overtime compensation "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages or their unpaid overtime compensation…and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The statute also provides that employees may bring a collective action "[on] behalf…of themselves and other employees similarly situated." *Id*. The Supreme Court has recognized that collective actions allow for the efficient adjudication of similar claims so that similarly situated employees, whose claims are often small and not likely to be brought on an individual basis, may join together to prosecute their claims. See *Hoffman-La Roche, Inc. v. Sperling,* 493 U.S. 165, 170 (1989).

To participate in a collective action, unlike in a Rule 23 class action, an employee must affirmatively "opt-in" to the action, that is, he or she must give consent in writing to become a party and such consent must be filed with the court in which such action is brought. *Id*. at 168; 29 U.S.C. § 216(b). Until an absent collective member opts-in, the statute of limitations on his/her

claim continues to run. 29 U.S.C. § 255(a); *Lynch v. United Serv. Auto. Ass'n*, 491 F.Supp.2d 357, 371 (S.D.N.Y. 2007). As such, it is imperative that notice be given promptly to preserve the claims of collective action members, and it is not uncommon for courts to approve expedited notice. See *Braunstein v. E. Photographic Labs, Inc*., 600 F.2d 335, 226 (2d Cir. 1978); *Hoffman v. Sbarro, Inc.,* 982 F.Supp.249, 262 (S.D.N.Y. 1997). Although 29 U.S.C. § 216(b) does not require parties to obtain judicial approval before seeking to advise other similarly-situated individuals of their FLSA rights, district courts routinely expedite and facilitate notice to potential opt-in plaintiffs by conditionally certifying the collective. See e.g., *Jackson v. Bloomberg L.P.*, 298 F.R.D. 152, 162 (S.D.N.Y. 2014); *Hamadou v. Hess Corp.*, 915 F.Supp.2d 651, 670 (S.D.N.Y. 2013); *Myers*, 624 F.3d at 554; *Ramirez v. M L Rest., Corp*., 2015 U.S. Dist. LEXIS 181605, *4-5 (S.D.N.Y. March 13, 2015); *Winfield v. Citibank, N.A*., 843 F.Supp.2d 397, 405 (S.D.N.Y. 2012). Further, to ensure that the rights protected by the FLSA do not grow stale through lack of knowledge, the Supreme Court has held that courts have broad authority to facilitate early notice of the existence of the lawsuit to potential opt-in plaintiffs. *Hoffman-La Roche,* 493 U.S. at 170; See also, *Juarez*, 29 F.Supp. at 369 ("District courts in FLSA actions have discretion to implement this collective mechanism by facilitating notice to potential plaintiffs of the pendency of this action and of their opportunity to opt-in as represented plaintiffs.").

The Second Circuit has long recognized that FLSA cases should, if possible, be certified as collective actions in light of the "broad remedial purpose of the Act, which should be given a liberal construction" and "the interest of the courts in avoiding multiplicity of suits." *Braunstein*, 600 F.2d at 336. Conditional certification is justified by the court's "managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Hoffman-La Roche*, 493 U.S. at 170-171; *Fasanelli v. Heartland Brewery, Inc.,* 516

F.Supp.2d 317, 321 (S.D.N.Y. 2007) ("When determining whether a matter shall proceed a collective action, courts should be mindful of the remedial purposes of the FLSA."). The alternative—a multitude of virtually identical individual suits—would unnecessarily burden the courts and risk inconsistent judgments arising from the same circumstances under the same laws.

III.     **PLAINTIFFS SATISFY THE MINIMAL BURDEN NECESSARY TO GRANT CONDITIONAL CERTIFICATION OF A COLLECTIVE ACTION AND THE SENDING OF NOTICE TO POTENTIAL COLLECTIVE ACTION MEMBERS**

To certify a case as a collective action, this circuit follows a "two-step mothed." *Myers*, 624 F.3d 537, 554-55 (2d Cir. 2010). The first step, upon plaintiff's motion, "involves the court making an initial determination" to send notice to potential collective actions members "who may be similarly situated to the named plaintiffs with respect to whether a FLSA violation has occurred." *Id*. at 555; *Hoffman*, 982 F.Supp. at 261. "The court may send notice after plaintiffs make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Myers*, 624 F.3d at 555 quoting *Hoffman*, 982 F.Supp. at 261. "The key element of that showing is a shared unlawful policy; that is, while the proposed collective need not be identical in every possible respect, its potential members must be similarly situated with respect to the allegedly unlawful policy or practice." *Hernandez*, 2017 U.S. Dist. LEXIS 102285 at *13.

At the notice stage, "the standard of proof should remain low because the purpose of this first stage is merely to determine *whether* similarly situated plaintiffs do in fact exist." *Rashid*, 2013 WL 11319388, at *1; See also, *Myers*, 624 F.3d at 555; *Juarez*, 29 F.Supp. 3d at 369; *Winfield*, 843 F.Supp.2d at 402 ("Plaintiffs need only make a modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law."). "Because the standard at the first stage is fairly lenient, courts applying it typically grant

conditional certification." *Rashid*, 2013 WL 11319388, at *1; *Torres v. Gristede's Operating Corp.,* 2006 U.S Dist. LEXIS 74039, *23 (S.D.N.Y. Sept. 29, 2006) ("The court 'typically' grants conditional certification.'"). "[T]he burden on plaintiff is not a stringent one, and the Court need only reach a preliminary determination that plaintiffs are similarly situated." *Hoffman*, 982 F.Supp. at 261; *Campos v. Vineyard Food & Beverage, Inc.,* 2015 U.S. Dist. LEXIS 178118, *2 (S.D.N.Y. Jan. 12, 2015) ("At this stage, [p]laintiff's burden is minimal because the determination that the parties are similarly situated is merely a preliminary one.") (citation and internal quotations omitted) *(Abrams, J.); Cunningham v. Elec. Data Sys. Corp.,* 754 F. Supp.2d 638, 643-644 (S.D.N.Y. 2010) ("The modest factual showing should remain a low standard of proof."); *In re Penthouse Exec. Club Comp. Litig.,* 2010 U.S. Dist. LEXIS 114743, *7 (S.D.N.Y Oct. 26, 2010) (describing plaintiff's threshold requirements as "very low" or "minimal."); *Cabrera v. 211 Garage Corp.,* 2008 U.S. Dist. LEXIS 67050, * (S.D.N.Y. Aug. 22, 2008) (granting plaintiff's motion for conditional certification on grounds that plaintiff's burden at the notice stage is "very low"). It is not until "the second stage [that] the district court will, on a fuller record, determine whether a so-called collective action may go forward by determining whether the plaintiffs who have opted in are in fact similarly situated to the named plaintiffs." *Myers*, 624 F.3d at 555; *Winfield*, 843 F.Supp.2d at 402, n. 3 ("The case law is clear that a heightened standard is not appropriate during the first stage of the conditional certification process and should only be applied once the entirety of discovery has been completed.").

In this first stage, "[c]ourts typically decide the question of preliminary certification—not having had the benefit of full discovery—based on the pleadings, affidavits, and declarations submitted by the plaintiff." *Hernandez,* 2017 U.S. Dist. LEXIS 102285 at *14. "When there are ambiguities in the papers seeking collective action status, the court must draw all inferences in

favor of the plaintiff at the preliminary certification stage." *Hernandez*, 2017 U.S. Dist. LEXIS 102285, at *15. As such, the merits of a plaintiff's claims are not an issue in a motion for conditional certification. *Laroque v. Domino's Pizza, LLC*, 557 F.Supp.2d 346, 354 (E.D.N.Y. 2008); See e.g., *Mentor v. Imperial Parking Sys.,* 246 F.R.D. 178, 181 (S.D.N.Y. Sept. 27, 2007) ("[T]he merits of plaintiff's claims need not be valuated and discovery need not be completed to approve and disseminate a § 216(b) notice."); *Fasanelli*, 516 F.Supp.2d at 322 ("To the extent that Defendants['] opposition relied on a detailed factual dispute about whether Defendants maintained illegal off-the-clock policy, illegal tip-retention policy, or failed to pay the minimum wage, that inquiry is misplaced as those issues go to the merits of the case."); *Toure v. Cent. Parking Sys. of N.Y.,* 2007 U.S. Dist. LEXIS 74056, *6 (S.D.N.Y. Sept. 28, 2017) (noting that "the merits of a plaintiff's claims need not be evaluated" at the conditional certification stage); *Lynch,* F.Supp.2d at 368 ("At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations."); *Winfield*, 843 F.Supp. 2d at 407, n.6 ("Courts in this Circuit regularly conclude that [defendant's] declarations do not undermine the plaintiffs' showing in the first stage of the conditional certification process."). Further, *In re Penthouse*, the court held that defendants' submission of competing affidavits "amounts to a premature request to make credibility determinations and factual findings, something that is inappropriate at the notice stage." *In re Penthouse*, 2010 U.S. Dist. LEXIS 114743 at *12.

In the case at bar, each of the two Plaintiffs have provided supporting affidavits in support of their instant motion that additional employees who are similarly situated with respect to the Defendants' treatment of them, do, in fact, exist. Their sworn testimony even provides a non-exhaustive list of such employees. Beda Decl. ¶ 20; Garcia Decl. ¶ 20. That is all that is required

for Plaintiffs to make their "modest factual showing." Courts in this circuit routinely grant conditional certification motions based on such evidence (i.e., allegations in pleadings and affidavits). See e.g., *Khalil v. Original Homestead Rest., Inc.,* 2007 U.S. Dist. LEXIS 70372, at *3 (S.D.N.Y. Aug. 9, 2007) (certifying collective action based upon complaint and one affidavit); *Zhao v. Benihana, Inc.,* 2001 U.S. Dist. LEXIS 10678 (S.D.N.Y. May 7, 2001) (certifying collective based upon one affidavit founded on plaintiff's "best knowledge."). Furthermore, the number of affidavits are inconsequential as a "[a] single affidavit providing some basis for an inference that a company-wide policy exists could be significant to grant conditional certification." *Fernandez v. Sharp Mgmt.*, 2016 U.S Dist. LEXIS 141916,*9 (S.D.N.Y. Oct. 13, 2016); *Nahar v. Dozen Bagels Co*., Inc., 2015 U.S. Dist. LEXIS 143839 (S.D.N.Y. Oct. 20, 2015) ("Indeed, the burden is so low that even one or two declarations establishing the common plan may suffice."); *Garcia v. Spectrum of Creations, Inc.,* 102 F.Supp.3d 541, 548 (S.D.N.Y. 2015) (two declarations provided a sufficient factual showing to distribute notices to similarly situated individuals); *Cheng Chung Liang,* 2013 U.S. Dist. LEXIS 73976 at *4 (a single plaintiff's affidavit was deemed adequate evidence because in it, plaintiff testified that his co-workers were not paid properly); *Romero v. La Revise Assoc.,* LLC, 968 F.Supp.2d 639, 646 (S.D.N.Y. 2013) ("The affidavit of plaintiff attesting to the existence of similarly situated plaintiffs is sufficient for the purposes of a motion to approve a collective action.").

Plaintiffs Beda and Garcia both have provided supporting declarations attesting that they, and other Assistant Teachers and Head Teachers, performed the same or similar job duties, were subject to the same unlawful policies, and were not paid minimum wage or overtime pay at the time-and-one-half rate for all hours they worked in excess of 40 per work week while employed by Defendants. As such, it is clear that Plaintiffs have provided a sufficient basis for this Court to

grant conditional certification because they established that Defendants maintained and exercised a common policy and practice of denying employees minimum wage and overtime pay for all hours worked over 40. Given the pleadings and declarations, Plaintiffs more than satisfy their "very low" burden of demonstrating that the proposed collective is similarly situated to warrant the issuance of notice.

### IV. THE COURT SHOULD ORDER THAT NOTICE AND A REMINDER NOTICE BE SENT TO POTENTIAL COLLECTIVE ACTION MEMBERS AND ORDER DEFENDANTS TO PRODUCE COMPLETE CONTACT INFORMATION FOR ALL SIMILARLY SITUATED EMPLOYEES AT ALL LOCATIONS

Based on the above, the Court should authorize Plaintiffs to disseminate Notice to putative members of the collective at all of Defendants' locations. See *Ramirez*, 2015 U.S. Dist. LEXIS 181605; *Winfield*, 843 F.Supp.2d at 400-405; *Myers*, 624 F.3d at 555. A proposed notice in attached as Exhibit 8 to the Ames Declaration. The Notice provides clear instructions on how to opt-in, and accurately states the prohibition for retaliation or discrimination for participation in an FLSA action. This Notice is "timely, accurate, and informative" and therefore meets all legal requirements. See *Hoffman-La Roche*, 493 U.S. at 172. The proposed Notice achieves the objective of providing opt-in plaintiffs with accurate and timely notice concerning the pendency of the collective action and should therefore be adopted. Many courts in this Circuit have approved notice that is substantially in this form. See e.g., *Aguilar v. Trolio Landscaping, Inc.,* 7:16-cv-2230 (CS), Dkt. No. 16 (S.D.N.Y. June 27, 2016); *Amador v. Cils, Ltd d/b/a Club Int'l Limousine*, 7:16-cv-1733 (VB), Dkt. No. 18 (S.D.N.Y. June 14, 2016; *David v. LIH Property Mgmt. Srvcs. LLC,* 1:15-cv-1522 (JMF), Dkt. No. 28 (S.D.N.Y. June 15, 2015); *Hernandez v. Highgate Hotels, L.P., et al,* 1:15-cv-8144 (JGK), Dkt. No. 23 (S.D.N.Y. Feb. 4, 2016).

## A. The Court should Order the Notice Period to Date Back Six Years and 228 Days Before the Filing of the Complaint[7]

With respect to the Notice period, Plaintiffs request that they be authorized to send notice to similarly situated employees who worked for Defendants at any of their locations six years before the filing of their Complaint. A number of courts in this Circuit have approved a six-year notice period when the complaint alleges violations of the NYLL in addition to the FLSA, as it does here. See e.g., *Vargas v. Black forest Bew Haus, LLC*, 2016 U.S. Dist. LEXIS 64901, *9, n. 1 (E.D.N.Y. May 17, 2016) ("The Court finds that is appropriate to provide notice to potential plaintiffs who may have viable state law claims within the six-year statute of limitations period, even if those plaintiff's FLSA claims are time-barred."); *Fonseca v. Dircksen & Talleyrand, Inc.,* 2014 U.S. Dist. LEXIS 52744, *19 (S.D.N.Y. Apr. 11, 2014) (granting request for six-year notice period because "Plaintiffs' complaint includes New York Labor Law claims."); *Gonzalez v. Scalinatella, Inc.*, 2013 U.S. Dist. LEXIS 168540, *10 (S.D.N.Y. Nov. 25, 2013) quoting *Guaman v. 5 "M" Corp.,* 2013 U.S. Dist. LEXIS 152379 (S.D.N.Y. Oct. 23, 2013 ) ("Where, as here, Plaintiffs' Complaint also includes NYLL claims, courts in this District routinely deny requests to limit the Notice time period to three years, as even where claims are untimely under the FLSA, they may shed light on the appropriateness of certifying a class action under the NYLL."); *Winfield*, 843 F.Supp.2d at 410 (recognizing that "several courts in this Circuit have deemed it

---

[7] Due to the series of Executive Orders issued by then-New York State Governor Andrew Cuomo in response to the Coronavirus pandemic, the statute of limitations for claims brought under New York State law—including Plaintiffs' and the collective's NYLL claims—was tolled from March 20, 2020, through and including November 3, 2020, a period of 228 days. See N.Y. Exec. Order Nos. 202.14 (April 7, 2020); 202.28 (May 7, 2020); 202.38 (June 6, 2020); 202.48 (July 6, 2020); 202.55 (August 5, 2020); 202.55.1 (August 6, 2020); 202.60 (September 4, 2020); 202.67 (October 4, 2020); 202.72 (November 3, 2020); see also *Bonilla v. City of N.Y.*, No. 20-cv-1704 (RJD) (LB), 2020 U.S. Dist. LEXIS 211171 (E.D.N.Y. Nov. 10, 2020); *Citi Connect, LLC v. Local Union No. 3, IBEW*, 2020 U.S. Dist. LEXIS 185796 (S.D.N.Y. Oct. 7, 2020).

appropriate to grant six-year rather than three-year notice periods" where a plaintiff also asserts NYLL claims) (collecting cases); *Gani v. Guardian Serv. Indus. Inc.,* 2011 U.S. Dist. LEXIS 4353 (S.D.N.Y. Jan. 13, 2011) (authorizing notice to be distributed to employees who held different job titles during the six years preceding the date on which the complaint was filed); *Avila v. Northport Car Wash, Inc.,* 774 F.Supp.2d 450, 455 (E.D.N.Y. 2011) (collecting cases and finding "persuasive the reasoning set forth in those decisions of other courts which have applied a six-year period to determine who is eligible to receive the Notice of Pendency.").

Alternatively, should the Court decline to follow the often approved six-year notice period, Plaintiffs propose to send notice to similarly situated employees who worked for Defendants at any of their locations three years before the filing of the Complaint. *Whitehorn v. Wolfgang's Steakhouse, Inc.,* 767 F.Supp.2d 445, 451 (S.D.N.Y. 2011) (extending notice period to three years prior to the filing of the complaint); *Fasanelli*, 516 F.Supp.2d at 323, n.3 (authorizing notice for three year period from the filing of plaintiff's complaint); *Sultonmurodov v. Mesivta of Long Beach*, 2015 U.S Dist. LEXIS 138324, *9 (E.D.N.Y. Oct. 9, 2015) ("[T]he court holds that notices shall be sent out to those potential collective members employed within the three year period prior to the date of the filing of the Complaint. Defendants may challenge the timeliness of individual plaintiffs' claims at a later date."). This is particularly applicable here, as Defendants have consented to a toll of the statute of limitations for prospective opt-in plaintiffs' claims, effective May 9, 2023. Ames Decl. ¶ 18.

Furthermore, the statute of limitations period is three years for willful FLSA violations. 29 U.S.C. § 255(a). Here, there is no doubt that Defendants' actions are willful, which warrants a three year statute of limitations period. The Individual Defendants have operated Montessori schools under the "Nurtury" brand since 2007—employing well over one hundred Assistant

Teachers and Head Teachers (their primary workforce)—using multiple contemporaneous methods to keep employees' time. Further, during Plaintiffs' employment, several employees—including Plaintiffs—complained of Defendants' unlawful pay practices, directly to the Individual Defendants. As such, Defendants have (or certainly should have) knowledge of federal and New York State wage and hour laws pertaining to pay of Assistant Teachers and Head Teachers.

In the instant case, the Complaint was filed on June 9, 2022. Thus, Plaintiffs' proposed Notice includes any employees of Defendants who performed any work for Defendants at any of their Nurtury Montessori school locations from October 25, 2015, to present.

### B. The Court Should Order Defendants to Produce Potential Collective Action Members' Complete Contact Information

In order to provide notice of this action, Plaintiffs request that the Court also order Defendants to produce the following information within 14 days of its Order:

> A list, in electronic format, of all Assistant Teachers and Head Teachers employed by Defendants at any point between October 25, 2015, and the present, at any of Defendants' Nurtury Montessori school locations, that includes: full names, last known addresses, all known mobile and home telephone numbers, last known e-mail addresses, work locations, dates of employment, and all known languages spoken.

See e.g., *Hernandez*, 2017 U.S. Dist. LEXIS 102285 at *36 ("Consistent with the decisions of other courts in this District, the Court grants Plaintiffs' request to order [defendant] to provide contact information for potential collective action members.") (citation omitted.); *Hernandez v. Bare Burger Dio, Inc.,* 2013 U.S. Dist. LEXIS 89254, *13-14 (S.D.N.Y. June 25, 2013) quoting *Sexton v. Franklin First Fin., Ltd.,* 2009 U.S. Dist. LEXIS 50526 (E.D.N.Y. June 16, 2009) (ordering the production of telephone numbers of the putative collective, finding that "[a]s has been noted by a number of courts in this circuit, courts often grant this kind of request in connection with conditional certification of an FLSA collective action.'"); *Hernandez v. Merrill Lynch & Co.,*

*Inc.,* 2012 U.S. Dist. LEXIS 19822, *22 (S.D.N.Y. Apr. 6, 2012) ("[I]n this day of electronic communication, courts have authorized defendants to provide email address[es] as well."); *Fa Ting Wang v. Empire State Auto Corp.*, 2015 U.S. Dist. LEXIS 99089, *40 (E.D.N.Y. July 29, 2015) (granting plaintiff's request for the contact information for potential opt-in's on grounds that "Plaintiff's routine request for the names, mailing addresses, email addresses and telephone numbers of Defendants' drivers will assist in the provision of notice to these potential opt-in plaintiffs.").

### C. The Court Should Allow Plaintiffs to Send a Notice and a Reminder Notice to Potential Collective Action Members Via Mail and E-Mail

In addition to the original Notice, Plaintiffs also request that they be permitted to send reminder notices to prospective collective action members, thirty days after the original mailing of notice and opt-in forms, to remind potential opt-ins who have not yet opted into the case of the impending deadline for their response. Coupled with the fact that reminder notices help to "facilitate the remedial goals of the FLSA by protecting potential class members against their claims being extinguished by the running limitations period," *Mongiove v. Nate's Corp.,* 2016 U.S. Dist. LEXIS 16878, *22 (E.D.N.Y. Feb. 11, 2016), the food service industry is a transient industry with a high percentage of turnover, thus it is likely that notice/reminder notice via both mail and e-mail is likely to be a viable and efficient means of communicating with many prospective members of this collective action. See *Cherif v. Samday Delivery Corp.*, 2015 U.S. Dist. LEXIS 133807, *5 (E.D.N.Y. Sept. 30, 2015) ("Given the transient nature of some workforces, email addresses…may be an effective way of locating employees."). As such, a proposed Reminder Notice is attached as Exhibit 9 to the Ames Declaration.

Courts have "broad discretion to craft appropriate notices," *Fasanelli*, 516 F.Supp.2d at 323, and have regularly authorized such reminder notices. See e.g., *Valerio v. RNC Industries*,

LLC, 2:14-cv-03761 (LDW)(AKT), ECF No. 51 (E.D.N.Y. Jun. 24, 2016) ("…sending a reminder notice is consistent with the FLSA's objective of informing potential plaintiffs of the collective action and their right to opt-in.") (citation and internal quotations omitted). *Sultonmurodov*, 2015 U.S. Dist. LEXIS 138324 at *5; *Romero v. ABCZ Corp.,* 2015 U.S. Dist. LEXIS 58765, *14-15 (S.D.N.Y. Apr. 28, 2015); *Morris v. Lettire Const., Corp.,* 896 F.Supp.2d 265, 275 (S.D.N.Y. 2012).

Plaintiffs should be permitted to send the original and reminder notices by mail as well as e-mail because many potential plaintiffs may have changed residences since their employment with Defendants ended. A proposed subject line and body of the email, which shall contain the FLSA collective action notice (and reminder notice when appropriate) as an email attachment, is attached as Exhibit 10 to the Ames Declaration. See *Hernandez*, 2017 U.S. Dist. LEXIS 102285 at *34 (denying defendant's request that notice be sent only through first-class mail, and not through e-mail because "[c]ourts in this Circuit routinely approve email distribution of notice and consent forms in FLSA cases.") (citations omitted); *Pippins v. KPMG LLP,* 2012 U.S Dist. LEXIS 949, *41 (S.D.N.Y. Jan. 2, 2012) ("…[G]iven the reality of communications today, that the provision of email address and email notice in addition to notice by first class mail is entirely appropriate."); *Maldonado v. Arcadia Bus. Corp.*, 2015 U.S Dist. LEXIS 54523, *10 (E.D.N.Y. Apr. 27, 2015) ("Plaintiff's counsel is authorized to send the revised notice, opt-in form, and reminder letter to all class members by first class mail and email."); *Jackson*, 298 F.R.D. at 169 (holding that defendant must provide email addresses to plaintiff).

> **D. The Court Should Permit Plaintiffs to Distribute the Notices to Potential Collective Action Members in English, Portuguese, Spanish and Any Other Language Identified by Defendants**

Plaintiffs request that the Court order that all Notices be distributed in English, Spanish, and any other language that Defendants identify their workers as speaking. Plaintiffs, through their conversations and observations with their former co-workers, maintain that Portuguese and Spanish were often the first languages of Assistant Teachers and Teachers due to Defendants' practice of employing immigrant workers from Brazil and Spanish-speaking countries. Beda Decl. ¶ 39; Garcia Decl. ¶ 37. As such, Plaintiffs request permission to have a certified translation made of the original notice, reminder notice, and notices via e-mail to be sent to each putative collective action member in Portuguese, Spanish and any additional language identified. See *Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 76 (E.D.N.Y. 2016) (collecting cases and omitting quotation marks) (granting request to mail and post notice in English and Spanish because "[g]enerally, courts permit notice to be translated into the mother tongue of non-English speaking groups of potential plaintiffs."); *Iriarte v. Café 71, Inc.,* 2015 U.S. Dist. LEXIS 166945, *14 (S.D.N.Y. Dec. 11, 2015) citing *Cuzco v. Orion Builders, Inc.,* 477 F.Supp.2d 628, 635 (S.D.N.Y. 2007) (permitting mailing and posting of notice in English and Spanish); *Colon v. Major Perry Street Corp.,* 2013 U.S. Dist. LEXIS 93021, *23 (S.D.N.Y. July 2, 2013) ("The Court agrees that it would be reasonable…that the notice may be translated into the mother tongue of non-English speaking groups of potential plaintiffs…").

## V.   THE COURT SHOULD ORDER DEFENDANTS TO POST NOTICES IN THE WORKPLACE

In addition, Plaintiffs request that the Court order Defendants to post the notices and Consent to Join Forms in English, Portuguese, Spanish, and any other language identified in a conspicuous place at all of Defendants' locations. See *Rojas v. Kalesmeno Corp.,* 2017 U.S. Dist. LEXIS 112491, *16-17 (S.D.N.Y. July 19, 2017) (ordering defendants to post notice in "conspicuous locations" at defendants' restaurants). Following conditional certification of an

action, courts commonly require that a defendant post notice, even though potential collective action members are also being notified of the action via other methods. See e.g., *Benavides v. Serenity Spa NYC Inc.,* 166 F.Supp.3d 474, 487 (S.D.N.Y. 2016) ("Courts have approved [postings on employee bulletin boards and in common employee spaces] even when the notice will be mailed to prospective plaintiffs, finding defendants' objections of repetitiveness, disruption and burden unpersuasive, and noting that [posting of notice] maximized potential plaintiffs' opportunities to be informed of the pendency of the litigation and consider whether to opt in.") (citations and internal quotations omitted); *Rosario v. Valentine Ave. Discount Store, Co., Inc,* 828 F.Supp.2d 508, 521 (E.D.N.Y. 2011); *Kim Man Fan v. Ping's on Mott, Inc.,* 2014 U.S. Dist. LEXIS 54170, *12 (S.D.N.Y. Apr. 14, 2014); *Harhash v. Infinity West Shoes, Inc.,* 2011 U.S. Dist. LEXIS 96880, *14 (S.D.N.Y. Aug. 24, 2011); *Whitehorn*, 767 F.Supp.2d at 449 (same).

In light of the foregoing, the Court should order Defendant to post notices and FLSA consent forms in a conspicuous place at all locations of Defendants in all relevant languages, as well as provide an affidavit that they have done so and that the notices will remain there, unobstructed, throughout the pendency of the opt-in period.

## VI.    THE COURT SHOULD ORDER EQUITABLE TOLLING OF THE STATUTE OF LIMITATIONS UNDER THE FLSA

Should the Court grant the instant motion, Plaintiffs respectfully request that, to avoid inequitable circumstances, the FLSA statute of limitations be tolled from November 27, 2023 (the prior deadline for the filing of this instant motion) until the deadline for potential opt-in plaintiffs (following distribution of notice to those potential opt-ins) expires. District courts in this and other circuits have granted requests for equitable tolling to avoid prejudice to actual or potential opt-in plaintiffs that can arise from the unique procedural posture of such cases. See e.g., *Glatt v. Fox Searchlight Pictures Inc*., 2012 U.S. Dist. LEXIS 121964, *6 (S.D.N.Y. Aug. 26, 2013) (tolling

24

statute of limitations as of the date the plaintiff was originally scheduled to file her motion for conditional certification); *Jackson,* 298 F.R.D at 170-171 (tolling the statute of limitation as of the date of filing of the plaintiff's motion); *McGlone v. Contract Callers*, 867 F.Supp.2d 438, 445 (S.D.N.Y. 2012) (tolling statute of limitations while conditional certification was being decided).

Further, courts have specifically recognized that "the delay caused by the time required for a court to rule on a motion, such as one for certification of a collective action in a FLSA case, may be deemed an 'extraordinary circumstance' justifying application of the equitable tolling doctrine." *Yahraes v. Rest. Assoc Events Corp.*, 2011 U.S. Dist. LEXIS 23115, *9 (E.D.N.Y. Mar. 8, 2011); *Hart v. Crab Addison,* 2015 U.S. Dist. LEXIS 9197, *14 (W.D.N.Y. Jan. 27, 2015); *Jackson*, 298 F.R.D. at 170-171; *Lee v. ABC Carpet & Home,* 236 F.R.D. 193, 199-200 (S.D.N.Y. 2006). Plaintiffs' request is even more so appropriate given that Plaintiffs' counsel attempted to obtain Defendants' consent to the relief requested herein, prior to the making of the motion, but was unsuccessful.   Ames Decl. ¶ 10.

## CONCLUSION

In accordance with the above, Plaintiffs respectfully request that the Court grant Plaintiffs' motion in its entirety.

Dated: December 4, 2023
      New York, New York

                                    Respectfully submitted,

                                    **AKIN LAW GROUP PLLC**

                                    */s/ Justin Ames*
                                    Justin Ames, Esq.
                                    45 Broadway, Suite 1420
                                    Tel:  (212) 825-1400
                                    Fax: (212) 825-1440
                                    *Attorneys for Plaintiffs and the FLSA Collective*