**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

Jeniffer Beda, Nicole Garcia,

                              Plaintiffs,

             -against-

The Nurtury at Flandreau, Inc., et al.,

                             Defendants.

-----------------------------------------------------------------X

22-cv-4827-NSR-VR

**OPINION AND ORDER**

**VICTORIA REZNIK, United States Magistrate Judge:**

## I.    INTRODUCTION

Plaintiffs Jeniffer Beda and Nicole Garcia bring this action for violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 to 219, and certain provisions of the New York Labor Law, against Defendants The Nurtury at Flandreau, Inc., The Nurtury of Larchmont, Inc., The Nurtury Montessori at North Avenue, LLC, Brianna Banahan, and Cathleen Billone. Plaintiffs allege, as relevant now, that Defendants failed to pay them minimum wage for all hours worked and failed to pay them overtime for hours worked over 40 hours per week, in violation of the FLSA. Plaintiffs now move for conditional certification of a collective action and related relief under Section 216(b) of the FLSA, as well as equitable tolling of the statute of limitations on behalf of putative collective members. Plaintiffs also move for precertification discovery of contact information for prospective collective members and approval of a proposed

notice to send out to the collective.  Defendants have not opposed Plaintiffs' motion.[1]

For the reasons below, Plaintiffs' motion for conditional certification is **GRANTED**.
The Court grants Plaintiffs' motion to conditionally certify a collective limited to Head Teachers
(also known as Lead Teachers or Teachers) and Assistant Teachers.  Plaintiffs' request for
equitable tolling of the statute of limitations is **GRANTED**.  Plaintiffs' motion to send out the
proposed notice to this putative collective is **GRANTED** in line with the modifications discussed
below in this Opinion and Order.  Finally, Plaintiffs' motion for precertification discovery of
contact information for the proposed putative collective members is **GRANTED** and Defendants
are **ORDERED** to produce the contact information described below within 14 days of the date
of this Opinion and Order.

## II.     BACKGROUND[2]

### A.  Factual Background

#### 1.  The Parties and Relevant Policies

Defendants Flandreau, Larchmont, and North Avenue (the Nurtury Defendants), operate
as part of a network of Montessori schools that are owned and operated by Defendants Banahan
and Billone.  (ECF Nos. 26 (Am. Compl.) at ¶¶ 39, 50, 62; 46-5 (Beda Decl.) at ¶ 2; 46-6 (Garcia
Decl.) at ¶ 2).  The Nurtury Defendants provide daycare services and Montessori educational
instruction to children.  (ECF Nos. 26 at ¶¶ 38, 49, 61; 46-5 at ¶ 2; 46-6 at ¶ 2).  They operate
their schools out of several residential houses in Westchester, New York.  (ECF Nos. 26 at

---

[1] Defendants failed to oppose Plaintiffs' motion despite ample opportunity to do so.  Defendants' opposition had
first been due on December 26, 2023.  (*See* ECF No. 53 at 4).  And despite extending the deadline to April 11, 2024
(*see* ECF 02/13/2024 & 03/28/2024 Minute Entries), Defendants failed to submit an opposition.  Thus, the Court
treats Plaintiffs' motion as unopposed.  *See, e.g.*, *Chen v. Kicho Corp.*, No. 18-cv-7413, 2020 WL 1900582, at *4
(S.D.N.Y. Apr. 17, 2020) ("Defendants have not filed any response to Plaintiff's motion.  Therefore, the Court
considers Plaintiff's motion to be unopposed and this matter to be fully submitted.").

[2] The facts in this Opinion and Order are drawn from the Amended Complaint (ECF No. 26), and the Declarations
of Plaintiffs Beda and Garcia (ECF Nos. 46-5, 46-6).  As discussed in Section III.A below, Plaintiffs need only
make a modest factual showing for purposes of this motion.

¶¶ 43–44, 54–55, 66, 186; 46-5 at ¶ 3; 46-6 at ¶ 3).  Defendants also offer housing to their

teachers at the same residential houses from which they operate their schools.  (ECF Nos. 26 at

¶¶ 383, 405; 46-5 at ¶ 5; 46-6 at ¶ 5).  Defendants required their non-U.S. citizen Head Teachers

and Assistant Teachers to enroll in a Montessori training program, at a tuition of $10,000.  (ECF

No. 26 at ¶¶ 205–06, 209–10).  Banahan and Billone are the owners and operators of the Nurtury

Defendants and are responsible for their managerial and personnel decisions.  (ECF Nos. 26 at

82–87, 95–99, 104; 46-5 at ¶ 6; 46-6 at ¶ 6).

Plaintiff Beda worked for Defendants between September 2019 and November 2020, at

the North Avenue, Flandreau, and North Brook Road Schools, and she lived at the North Brook

Road School.  (ECF Nos. 26 at ¶¶ 29, 148, 154, 175–78, 188, 190; 46-5 at ¶ 7).  Throughout her

employment, she was a nonexempt employee.  (ECF Nos. 26 at ¶ 149; 46-5 at ¶ 8).  Beda was

initially hired as an Assistant Teacher, and in July 2020, she was promoted to Head Teacher.

(ECF Nos. 26 at ¶¶ 29, 148, 268, 271, 273; 46-5 at ¶ 8).  She was mainly responsible for care and

instruction of children in her classrooms, along with the cleaning and maintenance of

classrooms.  (ECF Nos. 26 at ¶¶ 29, 150–53, 273–75, 373; 46-5 at ¶ 9).  Plaintiffs allege that

Beda needed to work varying hours, regularly exceeding 40 hours per week, of in-classroom

work.  (ECF Nos. 26 at ¶¶ 217, 270, 278, 351; 46-5 at ¶ 10).  For example, between May and

July 2020, she worked about 50 to 55 hours per week of in-classroom work.  (ECF No. 46-5 at

¶ 10).  They also allege that she was required to perform an additional 10 to 12 hours of work

outside the classroom.  (ECF Nos. 26 at ¶¶ 272, 281–82; 46-5 at ¶ 11).  After Beda was

constructively terminated, Defendants required Beda to pay the balance of her $10,000

Montessori training tuition, of which $8,000 was outstanding.  (ECF Nos. 26 at ¶¶ 205, 209–10,

288–90, 293, 359–62, 369; 46-5 at ¶¶ 17–18).

Plaintiff Garcia worked for Defendants between March and May 2020 and between November 2021 and January 2022, at the North Avenue and Palmer Avenue Schools, and she lived at the North Avenue School.  (ECF Nos. 26 at ¶¶ 34, 406, 416, 463, 496; 46-6 at ¶ 7).  She too was a nonexempt employee and worked as an Assistant Teacher.  (ECF Nos. 26 at ¶ 34; 46-6 at ¶ 8).  She was responsible for cleaning the entire North Brook Road building, preparing the classroom for students, monitoring students during the school day, and assisting the teacher with providing care and instruction of the students.  (ECF Nos. 26 at ¶ 407; 46-6 at ¶ 9).  Plaintiffs allege that Garcia needed to work varying hours, regularly exceeding 40 hours per week, by performing about 55 hours of weekly, in-classroom work.  (ECF Nos. 26 at ¶¶ 412–13, 417–18, 471; 46-6 at ¶ 10).  They also allege that she was required to perform another five hours of work per week, outside the classroom.  (ECF Nos. 26 at ¶ 414; 46-6 at ¶ 11).  After Garcia was terminated, Defendants required her to pay the balance of her $7,000 Montessori training tuition.  (ECF Nos. 26 at ¶¶ 459–61, 522–25; 46-6 at ¶¶ 17–18).

As full-time employees, Beda and Garcia were paid a flat hourly wage per hour of in-classroom work, which fluctuated weekly.  (ECF Nos. 26 at ¶¶ 6, 172–74, 197, 199, 267, 270–71, 276, 283, 297, 413–14, 419, 474; 46-5 at ¶¶ 12–13; 46-6 at ¶¶ 12–13).  But they were not paid for the work performed outside the classroom.  (ECF Nos. 26 at ¶¶ 6, 174, 272, 280–83, 297, 413–14; 46-5 at ¶ 14; 46-6 at ¶ 14).  Thus, Plaintiffs claim that they were not paid the minimum wage for all hours worked and were not paid overtime for hours worked over 40 hours per week, in violation of the FLSA.  (ECF Nos. 46-5 at ¶¶ 15–16; 46-6 at ¶¶ 15–16).

2.   The Collective Allegations

Beda and Garcia assert that Defendants applied their pay practices widely.  (ECF Nos. 46-5 at ¶¶ 20, 33–37; 46-6 at ¶¶ 20, 33–35).  They recalled, based on their observations and

conversations, that other Head Teachers and Assistant Teachers faced the same compensation practices. (ECF Nos. 46-5 at ¶¶ 20, 33–37; 46-6 at ¶¶ 20, 33–35). Beda identified six such individuals (two identified by their full names and four identified only by their first names): Mercedes Teixeira, Bruna Caetano, Leah, Alejandra, Shamira, and Andrea. (ECF No. 46-5 at ¶ 20). Garcia identified three such individuals (one identified by her full name and two identified by only their first names): Beatriz Carubi, Denise, and Sylvana. (ECF No. 46-6 at ¶ 20). For example, Beda recalled complaining with Teixeira to Banahan, in May 2020, about pay practices. (ECF No. 46-5 at ¶ 20). She also recalled complaining together with Leah to Banahan in July 2020 about pay practices. (*Id.*) Both Beda and Garcia explained that they "personally observed" other teachers "perform the same and/or similar tasks as [they] did" and for "approximately the same hours per week." (ECF Nos. 46-5 at ¶ 34; 46-6 at ¶ 34). Based on conversations they had with Banahan and Billone, Beda and Garcia learned that other teachers were not being paid for hours worked outside the classroom and were not being paid overtime for work performed over 40 hours per week. (ECF Nos. 46-5 at ¶¶ 35–37; 46-6 at ¶¶ 35–36).

## B.  Procedural Background

In June 2022, Beda initiated this action by filing a Complaint. (ECF No. 1 (Compl.)). In January 2023, this action was referred to the Hon. Paul E. Davison for general pretrial supervision. (ECF No. 20 (Or. of Ref.)). In April 2023, Garcia consented to become a plaintiff and an Amended Complaint was filed. (ECF Nos. 26 (Am. Compl.), 27 (Consent)). In May 2023, Defendants answered. (ECF No. 31 (Answer)). In June 2023, this action was reassigned to the undersigned. (ECF 06/07/2023 Notice of Reassignment).

In November 2023, the Court set a briefing schedule for Plaintiffs' motion for conditional collective certification. (ECF No. 44 (Or.)). In December 2023, Plaintiffs moved for conditional

collective certification.  (ECF Nos. 45 (Mot.), 46 (Decl.), 47 (Mem.)).  On January 18, 2024, the

parties informed the Court that they were engaged in meaningful settlement discussions.  (ECF

No. 52 (Ltr.) at 3).[3]  In a responsive memo endorsement, the Court observed that Defendants'

opposition to Plaintiffs' motion for conditional collective certification was past due and had been

due on December 26, 2023.  (ECF No. 53 (Memo Endorsement) at 4).  So, the Court directed

Defendants to explain whether they plan to oppose Plaintiffs' motion and whether they seek any

delay in the Court's ruling on Plaintiffs' motion to accommodate settlement discussion.  (*Id.*)

Defendants did not respond to the Court's question.  But at a February 2023, telephonic Status

Conference, the parties requested a Settlement Conference with the Court, and the Court

temporarily stayed the deadline for Defendants to oppose Plaintiffs' motion until two weeks after

the Settlement Conference.  (ECF 02/13/2024 Minute Entry).  The Settlement Conference was

held on March 28, 2024.  (ECF 03/28/2024 Minute Entry).  Thus, Defendants' opposition was

due on April 11, 2024.  But Defendants failed to file an opposition.  On April 16, 2024, Plaintiffs

requested that the Court treat their motion as unopposed.  (ECF No. 58).

### III.   DISCUSSION

#### A.  Applicable Law

##### 1.  The FLSA Generally

"The FLSA permits aggrieved employees to bring collective actions against their

employers for unlawful employment practices."  *Zhao v. Surge Priv. Equity*, No. 22-cv-7314,

2023 WL 3477591, at *3 (S.D.N.Y. May 16, 2023); *see* 29 U.S.C. § 216(b).  The statute

authorizes suits "by any one or more employees for and in behalf of himself or themselves and

other employees similarly situated."  29 U.S.C. § 216(b).  Unlike class actions brought under

---

[3] All page numbers refer to ECF pagination.

Rule 23 of the Federal Rules of Civil Procedure, "FLSA collective actions need not satisfy the standards of numerosity, typicality, commonality, or representativeness." *Zhao*, 2023 WL 3477591, at *3; Fed. R. Civ. P. 23(a). "Also unlike Rule 23, only potential plaintiffs who opt in by filing written consents to join the collective action can be bound by the judgment or benefit from it." *Zhao*, 2023 WL 3477591, at *3 (internal quotation marks omitted). The Court may, in its discretion, "facilitat[e] notice to potential plaintiffs of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (internal quotation marks omitted).

### 2.  Collective Certification under Section 216(b)

The Second Circuit has endorsed a two-step process for certifying FLSA collective actions. *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 515 (2d Cir. 2020). At the first step, the Court considers whether "to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Myers*, 624 F.3d at 555. "[T]o be 'similarly situated' means that named plaintiffs and opt-in plaintiffs are alike with regard to some material aspect of their litigation." *Scott*, 954 F.3d at 516. "That is, party plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Id.* Plaintiffs have a low burden at the first step, as they need only "make a modest factual showing that they and others together were victims of a common policy or plan that violated the law." *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016). "The modest factual showing cannot be satisfied simply by unsupported assertions, but it should remain a low standard of proof because the purpose of this first stage is merely to determine *whether* similarly situated plaintiffs do in fact exist." *Myers*, 624 F.3d at 555 (citation and internal quotations

marks omitted).  Finally, "[a] plaintiff must meet this minimal burden, even if the motion is unopposed by the defendants." *Wu v. Sushi Nomado of Manhattan, Inc.*, No. 17-cv-4661, 2019 WL 3759126, at *5 (S.D.N.Y. July 25, 2019).

At the second step, which typically occurs after more discovery, the Court "will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Myers*, 624 F.3d at 555.  At that point, "[t]he action may be 'de-certified' if the record reveals that they are not" similarly situated, "and the opt-in plaintiffs' claims may be dismissed without prejudice." *Id.*

"In deciding a conditional certification motion, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Zhao*, 2023 WL 3477591, at *3 (internal quotation marks omitted).  "Courts in this District have therefore held that a FLSA collective action may be conditionally certified based upon even a single plaintiff's affidavit." *Id.*; *Escobar v. Motorino E. Vill. Inc.*, No. 14-cv-6760, 2015 WL 4726871, at *2 (S.D.N.Y. Aug. 10, 2015) (collecting cases).  And that single affidavit need not contain anything more than "some combination of descriptions of personal experience, observations of other employees sharing that experience, and references to conversations with those employees." *Ramirez v. Liberty One Grp. LLC*, No. 22-cv-5892, 2023 WL 4541129, at *3 (S.D.N.Y. July 14, 2024) (collecting cases).

## B.  Analysis

### 1.  Conditional Certification of Collective Action

Plaintiffs seek conditional certification of a collective of current and former non-exempt employees who worked for Defendants as an Assistant Teacher or Head Teacher (also known as

Lead Teacher or Teacher), at any time between October 25, 2015, and the present, at any of the Nurtury Defendants' Montessori school locations.  (ECF Nos. 46-8; 46-9; 47 at 10–11, 26–29). As explained below, conditional certification is warranted.

### a. *Common Policy or Plan*

Plaintiffs have met their modest burden of showing that they and others were subject to a common policy or plan that allegedly violates the FLSA.  Both Beda and Garcia have submitted sworn declarations, declaring that additional employees, who are similarly situated with respect to Defendants' treatment of them, do exist.  (*See* ECF Nos. 46-5, 46-6).  They identify nine such employees.  (*See* ECF Nos. 46-5 at ¶ 20; 46-6 at ¶ 20).  They recall, based on their observations and conversations, that other Head Teachers and Assistant Teachers faced the same allegedly unlawful compensation practices.  (ECF Nos. 46-5 at ¶¶ 20, 33–37; 46-6 at ¶¶ 20, 33–35).  They explain that they "personally observed" other Head Teachers and Assistant Teachers "perform the same and/or similar tasks" as they performed, and for "approximately the same hours per week."  (ECF Nos. 46-5 at ¶ 34; 46-6 at ¶ 34).  And based on conversations they had with Banahan and Billone, they learned that other Head Teachers and Assistant Teachers were not being paid for hours worked outside the classroom and were not being paid overtime for work performed over 40 hours per week.  (ECF Nos. 46-5 at ¶¶ 35–37; 46-6 at ¶¶ 35–36).  Further, Beda recalled two occasions when she complained with coworkers about Defendants' pay practices.  (ECF No. 46-5 at ¶ 20).

These types of facts about Plaintiffs' coworkers are enough to satisfy their modest burden that other putative opt-in plaintiffs were subject to a common policy or plan that allegedly violated the FLSA.  *See, e.g.*, *Islam v. LX Ave. Bagels, Inc.*, No. 18-cv-4895, 2019 WL 5198667, at *6 (S.D.N.Y. Sept. 30, 2019) (granting conditional certification where plaintiffs "name or

otherwise identify specific employees that were subject to the same unlawful compensation policies") (internal quotation marks omitted); *Iriarte v. Café 71, Inc.*, No. 15-cv-3217, 2015 WL 8900875, at *4 (S.D.N.Y. Dec. 11, 2015) (certifying collective based on plaintiff's declaration that "he has personal knowledge from his observations and his conversations with his coworkers"); *see also Campos v. Lenmar Rest. Inc.*, No. 18-cv-12359, 2019 WL 6210814, at *4 (S.D.N.Y. Nov. 21, 2019) (certifying collective where plaintiff provided "specific details of conversations he had with [named coworkers] about not being able to take the entirety of their lunch break, as well as conversations with [others about] never being paid his full hourly wages"). Further, Plaintiffs' reliance on their two declarations is more than enough to satisfy their modest burden. *See Zhao*, 2023 WL 3477591, at *3 ("Courts in this District have therefore held that a FLSA collective action may be conditionally certified based upon even a single plaintiff's affidavit."); *Escobar*, 2015 WL 4726871, at *2 (collecting cases).

### b. *Scope of Collective*

"A FLSA collective may cover individuals with multiple job functions provided that the employees are subject to a common unlawful policy or practice." *Zhao*, 2023 WL 3477591, at *5 (alteration and internal quotation marks omitted). "Where a plaintiff fails to provide sufficient details that such common unlawful policy or practice also affected employees in different job functions or roles, courts will limit the collective to only those job functions for which the plaintiff bore his or her evidentiary burden." *Id.*; *see, e.g.*, *Gomez v. Kitchenette 123 Inc.*, No. 16-cv-3302, 2017 WL 4326071, at *5 (S.D.N.Y. Sept. 5, 2017) (certifying collective of delivery persons, but not all tipped employees because "the assertions in the affidavit that go beyond delivery persons are insufficiently detailed to justify certification of a broader collective").

Here, Plaintiffs have met their modest burden of showing that a collective of Head Teachers and Assistant Teachers should be conditionally certified. Each of the coworkers identified in Plaintiffs' declarations worked as a Head Teacher or Assistant Teacher. (*See* ECF Nos. 46-5 at ¶ 20; 46-6 at ¶ 20). Beda and Garcia asserted that, based on their observations and conversations, they recalled that other Head Teachers and Assistant Teachers faced the same unlawful compensation practices they experienced. (ECF Nos. 46-5 at ¶¶ 20, 33–37; 46-6 at ¶¶ 20, 33–35). Both Beda and Garcia explained that they "personally observed" other Head Teachers and Assistant Teachers "perform the same and/or similar tasks" they performed, and for "approximately the same hours per week." (ECF Nos. 46-5 at ¶ 34; 46-6 at ¶ 34). Further, based on conversations they had with Banahan and Billone, they learned that other Head Teachers and Assistant Teachers were not being paid for hours worked outside the classroom and were not being paid overtime for work performed over 40 hours per week. (ECF Nos. 46-5 at ¶¶ 35–37; 46-6 at ¶¶ 35–36). Thus, Plaintiffs have met their modest burden of showing that a collective of Head Teachers and Assistant Teachers should be conditionally certified.

### 2.  Precertification Discovery/Contact Information

Having found that conditional certification of a collective action is appropriate, the Court now considers the rest of Plaintiffs' motion. Plaintiffs seek an order compelling Defendants to produce, within 14 days of this Order:

> A list, in electronic format, of all Assistant Teachers and Head Teachers
> employed by Defendants at any point between October 25, 2015, and the present,
> at any of Defendants' Nurtury Montessori school locations, that includes: full
> names, last known addresses, all known mobile and home telephone numbers, last
> known email addresses, work locations, dates of employment, and all known
> languages spoken.

(ECF No. 47 at 29).

11

"Courts in this District commonly grant requests for the production of names, mailing addresses, email addresses, telephone numbers, and dates of employment in connection with the conditional certification of a FLSA collective action." *Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 488 (S.D.N.Y. 2016) (collecting cases).  Thus, Plaintiffs' request for production of contact information is **GRANTED**.  But as explained below in the Court's discussion of the appropriate temporal scope of the notice, Plaintiffs are only entitled to the above-described contact information for employees who worked for Defendants within three years of the filing of the Complaint here.

### 3.  The Notice

The Court has reviewed Plaintiffs' proposed notice, submitted with their motion for conditional certification.  (ECF No. 46-8).  The Court approves the proposed notice with certain modifications described below.

#### a.  *Temporal Scope of Notice and Opt-In Period*

Plaintiffs propose that the scope of the proposed notice—including the appropriate statute of limitations and equitable tolling—and the length of the opt-in period, should be 6 years and 228 days before the filing of Beda's Complaint, on June 9, 2022.  (ECF No. 47 at 27–28; *see* ECF No. 1).  Plaintiffs explain that the six-year period is appropriate because their action also raises claims under New York Labor Law, and that the other 228 days is appropriate because former Governor Andrew Cuomo had issued executive orders, during the COVID-19 pandemic, tolling the statute of limitations of claims brought under New York law, from March 20, 2020,

through November 3, 2020.[4]  (ECF No. 47 at 27–28).  Alternatively, Plaintiffs propose that the scope of the proposed notice and length of the opt-in period should be three years.  (*Id.* at 28).

The FLSA has a three-year statute of limitations for willful violations.  *See* 29 U.S.C. § 255(a); *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 318 (2d Cir. 2021) ("Claims for unpaid overtime compensation under the FLSA are generally subject to a two-year statute of limitations. But claims for unpaid overtime compensation arising out of an employer's willful violation of the FLSA are subject to a three-year statute of limitations.").  "Sensibly, then, courts often set a notice period for three years before the filing of the complaint in a FLSA case." *Zhao*, 2023 WL 3477591, at *7.  "Some courts in the Second Circuit have permitted six-year notice periods in conditionally certified FLSA collective actions which also involve NYLL claims to account for the NYLL's six-year statute of limitations."  *Id.* (internal quotation marks omitted); *Franze v. Bimbo Foods Bakeries Distrib., LLC*, No. 17-cv-3556, 2019 WL 1417125, at *4 (S.D.N.Y. Mar. 29, 2019) (collecting cases).  But "the growing trend in this Circuit is to use a three-year rather than a six-year notice period when the motion before the court seeks certification under the FLSA" rather than under Rule 23 of the Federal Rules of Civil Procedure in connection with New York Labor Law claims. *Zhao*, 2023 WL 3477591, at *7; *Franze*, 2019 WL 1417125, at *4 (collecting cases).  "This is so because courts have recognized that authorizing notice of FLSA-only claims to putative collective members who are otherwise time-barred from bringing claims may promote confusion should counsel later move for class certification of NYLL claims."

---

[4] "Executive Order 202.8, issued by Governor Cuomo at the onset of the COVID-19 pandemic, provided that 'any specific time limit for the commencement, filing, or service of any legal action' was tolled from March 20, 2020 to April 19, 2020." *Brain v. Execu-Search Grp., LLC*, No. 22-cv-8219, 2024 WL 838085, at *6 (S.D.N.Y. Feb. 28, 2024) (quoting N.Y. Comp. Codes R. & Regs. tit. 9, § 8.202.8 (2020)).  "Subsequent Executive Orders extended the suspension of statutes of limitations to November 3, 2020." *Id.* (quoting N.Y. Comp. Codes R. & Regs. tit. 9, § 8.202.72 (2020)).  But Governor Cuomo's Executive Orders had no impact on the statute of limitations for FLSA claims, as "[t]he statute of limitations in an FLSA action is provided by federal statute." *Id.*

*Zhao*, 2023 WL 3477591, at *7; *see also Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14-cv-2625, 2015 WL 4240985, at *5 (S.D.N.Y. July 13, 2015).

Because Plaintiffs' motion only seeks conditional certification of a collective under the FLSA, and because the Court cannot be assured at this stage that counsel will later seek certification of a NYLL class, much less be successful in doing so under Rule 23, the Court does not find that a six-year notice period is appropriate. *See Zhao*, 2023 WL 3477591, at *7. Instead, the Court authorizes notice to be sent to the relevant putative collective members for the three years before the Complaint was filed on June 9, 2022. (ECF No. 1).

### b. Equitable Tolling

The Court now turns to the related issue of equitable tolling. Plaintiffs request "that, to avoid inequitable circumstances, the FLSA statute of limitations be tolled from November 27, 2023 (the prior deadline for filing this instant motion) until the deadline for potential opt-in plaintiffs (following distribution of notice to those potential opt-ins) expires." (ECF No. 47 at 33).

An FLSA collective action is deemed commenced on the date of filing for named party plaintiffs who have simultaneously filed a consent. *See* 29 U.S.C. § 256. "In a collective action suit such as this, the statute of limitations period continues to run with respect to each potential plaintiff's collective action claim until that plaintiff files the written consent form opting into the suit." *Zambrano v. Strategic Delivery Sols., LLC*, No. 15-cv8410, 2022 WL 3369597, at *7 (S.D.N.Y. Aug. 16, 2022).

"Equitable tolling is appropriate only in rare and exceptional circumstances, where a plaintiff has been prevented in some extraordinary way from exercising his rights." *Id.*; *see also Ni v. HSBC Bank USA, N.A.*, No. 23-cv-309, 2024 WL 323284, at *7 (S.D.N.Y. Jan. 29, 2024)

14

(same).  "A plaintiff seeking equitable tolling bears the burden of establishing that he has been

pursuing his rights diligently, and that some extraordinary circumstance stood in his way."

*Zambrano*, 2022 WL 3369597, at *7 (alterations and internal quotation marks omitted).  "When

a movant does not provide any grounds showing equitable tolling may be appropriate, it will not

be applied."  *Id.*

      "Importantly, 'where parties are ordered or agree by stipulation to suspend proceedings

during the pendency of legal proceedings, the time during which a party is prevented from

obtaining legal relief is not counted for purposes of statutes of limitations.'"  *Id.* (alteration

omitted) (quoting *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 199 (S.D.N.Y. 2006)); *see also*

*Ramirez v. County of Nassau*, 345 F.R.D. 397, 404 (E.D.N.Y. 2024) (same).  Further, "[t]he

delay caused by the time required for a court to rule on a motion, such as one for certification of

a collective action in a FLSA case, may be deemed an extraordinary circumstance justifying

application of the equitable tolling doctrine."  *Mota v. Inter Connection Elec., Inc.*, No. 20-cv-

7530, 2021 WL 3188336, at *2 (S.D.N.Y. July 28, 2021); *see also Mathew v. SMZ Impex, Inc.*,

No. 17-cv-9870, 2019 WL 4409442, at *6 (S.D.N.Y. Sept. 16, 2019); *Yahraes v. Rest. Assocs.*

*Events Corp.*, No. 10-cv-935, 2011 WL 844963, at *2 (E.D.N.Y. Mar. 8, 2011).

      Here, equitable tolling is warranted to avoid prejudice to potential opt-in plaintiffs

resulting from delays caused by Defendants and the Court.  The Court delayed resolving

Plaintiffs' motion for conditional certification to accommodate multiple extensions of time for

Defendants to file their opposition and to accommodate settlement discussions.  Plaintiffs filed

their motion for conditional certification on December 4, 2023.  (ECF No. 45).  Defendants'

opposition had been due on December 26, 2023.  (*See* ECF No. 44).  But Defendants failed to

file an opposition.  Instead, on January 18, 2024, the parties informed the Court that they were

engaged in meaningful settlement discussions.  (ECF No. 52 at 3).  When the Court asked

Defendants whether they planned to oppose Plaintiffs' motion and whether they seek any delay

in the Court's ruling to accommodate settlement discussion (ECF No. 53 at 4), Defendants failed

to respond.  But at a February 2023 telephonic Status Conference, the parties requested a

Settlement Conference with the Court, and the Court temporarily stayed the deadline for

Defendants' opposition until two weeks after the Settlement Conference.  (ECF 02/13/2024

Minute Entry).  The Court held the Settlement Conference on March 28, 2024.  (ECF 03/28/2024

Minute Entry).  Thus, Defendants' opposition was due on April 11, 2024.  But Defendants again

failed to file one.  In sum, the multiple extensions for Defendants' opposition (which they never

filed) and the temporary stay of discovery to accommodate settlement discussions are

extraordinary circumstances justifying equitable tolling.  *See Mota*, 2021 WL 3188336, at *2;

*Zambrano*, 2022 WL 3369597, at *7.  And equitable tolling is warranted to prevent prejudice to

potential opt-in plaintiffs caused by these delays.  *See Mota*, 2021 WL 3188336, at *2;

*Zambrano*, 2022 WL 3369597, at *7.  Thus, Plaintiffs' request for equitable tolling is

**GRANTED**.[5]   The statute of limitations for potential opt-in plaintiffs is tolled, starting

December 4, 2023, and until the deadline for potential opt-in plaintiffs (following distribution of

notice to those potential opt-ins) expires.

---

[5] Where, as here, the district judge has referred an action to a magistrate judge for general pretrial purposes, the magistrate judge may decide non-dispositive issues but must issue reports and recommendations for dispositive ones absent consent of the parties.  *See Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007); Fed. R. Civ. P. 72 (providing different standards of review for a magistrate judge's ruling on dispositive and non-dispositive matters). In some instances, a motion regarding equitable tolling may be dispositive.  For example, "[a] decision that equitable tolling does not apply can be dispositive."  *Chen-Oster v. Goldman, Sachs & Co.*, No. 10-cv-6950, 2021 WL 5106528, at *3 (S.D.N.Y. Nov. 3, 2021).  But here, the Court's decision to toll the statute of limitations prospectively for potential opt-in plaintiffs disposes of no claims.  In any event, whether the issue is dispositive or not, the parties can seek review by the district judge.

###### c.   *Content of the Notice*

"To assess whether a proposed notice is appropriate, courts consider the overarching

policies of the collective suit provisions and whether the proposed notice provides accurate and

timely notice concerning the pendency of the collective action, so that an individual receiving the

notice can make an informed decision about whether to participate."  *Shi v. TL & CG Inc.*, No.

19-cv-8502, 2020 WL 4586359, at *4 (S.D.N.Y. Aug. 10, 2020) (alteration and internal

quotation marks omitted).  At a minimum, a notice should include:

> (a) the purpose of the notice,
> (b) the nature of the lawsuit,
> (c) the proposed class composition,
> (d) the legal effect of joining the lawsuit,
> (e) the fact that the court has taken no position on the merits of the lawsuit,
> (f) how to join the lawsuit,
> (g) the purely voluntary nature of the decision and the legal effect of not joining
> the lawsuit,
> (h) the prohibition against retaliation, and
> (i) the relevant contact information for inquiries.

*Id.*  The "[n]otice should also advise potential plaintiffs that they may be required to provide

information, appear for a deposition, or testify if they opt in."  *Bittencourt v. Ferrara Bakery &*

*Café, Inc.*, 310 F.R.D. 106, 117 (2015) (internal quotation marks omitted).

The Court approves the proposed notice (at ECF No. 46-8), with the changes below,

consistent with this Order: (1) the notice must clarify in its opening paragraph[6] that the collective

only includes Head Teachers (also known as Lead Teachers or Teachers) and Assistant Teachers;

(2) the temporal period must be limited to three, rather than six years plus 228 days, *see Zhao*,

---

[6] The Court Authorized Notice, filed at ECF No. 46-8, includes an opening paragraph, before the bullet points, that states as follows: "If you worked for THE NURTURY AT FLANDREAU, INC., THE NURTURY OF LARCHMONT, INC., THE NURTURY MONTESSORI AT NORTH AVENUE, LLC, BRIANNA BANAHAN, AND CATHLEEN BILLONE a/k/a CATHY BILLONE (collectively, "Defendants"), at any time between October 25, 2015, and the present, ***please read this Notice***."  (ECF No. 46-8 at 1).  This paragraph must clarify that the collective only includes Head Teachers (also known as Lead Teachers or Teachers) and Assistant Teachers."  (ECF No. 46-8 at 1).

2023 WL 3477591, at *8 (requiring modification of the temporal scope of the notice); and (3) the

notice should "include defense counsel's contact information," *id.*

### d.   Form and Method of Distribution

Plaintiffs seek to distribute the notice to potential collective action members in English,

Portuguese, Spanish, and any other language identified by Defendants.  (ECF No. 47 at 31–32).

They also seek to distribute the notice by mail and email (ECF No. 47 at 30), and request that the

Court order Defendants to post the notices and Consent to Join forms "in a conspicuous place at

all of Defendants' locations."  (ECF No. 47 at 32–33).  Plaintiffs' requests are **GRANTED**.

First, translating the notice sent to potential collection action members in the languages

likely spoken by them will "increase potential plaintiffs' ability to understand and opt in to the

action."  *See Shi*, 2020 WL 4586359, at *5.  Second, given the reality of communications today,

sending out notices by mail and email will be more effective at notifying potential opt-in

plaintiffs than mailed notice alone.  *Id.*  And third, courts routinely approve requests to post

notice on employee bulletin boards and in other common areas, even when potential members

will also be notified by mail.  *Id.*

Thus, Defendants are directed to distribute the notice to potential collective action

members in English, Portuguese, Spanish, and any other language identified by Defendants; to

send the notices by mail and email; and to post the notices and Consent to Join forms in English,

Portuguese, Spanish, and any other language identified, in a conspicuous place at all of

Defendants' locations.

### e.   Reminder Notice

Plaintiffs seek to distribute "reminder notices to prospective collective action members,

thirty days after the original mailing of the notice and opt-in forms, to remind potential opt-ins

who have not yet opted into the case of the impending deadline for their response." (ECF No. 47 at 30). Plaintiffs' request is **GRANTED**. "A reminder notice is appropriate given that notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in." *Shi*, 2020 WL 4586359, at *6 (internal quotation marks omitted).

## IV.   CONCLUSION

For the above reasons, Plaintiffs' motion for conditional certification of their FLSA collective action is **GRANTED**. The Court grants Plaintiffs' motion to conditionally certify a collective that is limited to Assistant Teachers or Head Teachers (also known as Teachers or Lead Teachers). Plaintiffs' request for equitable tolling of the statute of limitations is **GRANTED**. The statute of limitations for potential opt-in plaintiffs is tolled, starting December 4, 2023, and until the deadline for potential opt-in plaintiffs (following distribution of notice to those potential opt-ins) expires.

Plaintiffs' motion to send out the proposed notice to this putative collective is **GRANTED** in line with the modifications discussed in this Opinion and Order. Plaintiffs are directed to submit a revised proposed notice for the Court's approval within 14 days of the date of this Opinion and Order. Upon the Court's approval of the revised notice, notice may be issued consistent with its terms and this Court's orders.

Plaintiffs' motion for precertification discovery of contact information for the proposed putative collective members is **GRANTED**. Defendants are **ORDERED** to provide Plaintiffs the information described in Subsection III.B.2 above, within 14 days of the date of this Opinion and Order.

The Clerk of Court is respectfully directed to terminate the pending motion at ECF Nos. 45, 46, 47, and the pending letter motion at ECF No. 58.

**SO ORDERED.**

DATED:  White Plains, New York
     May 28, 2024

                             _____
                             VICTORIA REZNIK
                             United States Magistrate Judge